# United States Court of Appeals
## For the First Circuit

No. 21-1956

UNITED STATES OF AMERICA,

Appellee,

v.

ALLAN GIOVANNY CORDERO-VELÁZQUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Montecalvo, Circuit Judges.

Maria Soledad Ramirez-Becerra, with whom Maria Soledad Ramirez-Becerra Law Office was on brief, for appellant.

Katherine Twomey Allen, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Gregory B. Conner, Assistant United States Attorney, were on brief, for appellee.

December 23, 2024

**MONTECALVO, Circuit Judge.** Allan Giovanny Cordero-Velázquez was convicted of unlawful possession of a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) following the entry of a straight guilty plea. Cordero-Velázquez now appeals his sentence of forty-eight months' imprisonment, followed by three years of supervised release. On appeal, Cordero-Velázquez argues that his sentence was both procedurally and substantively unreasonable. For the reasons that follow, we disagree and affirm the sentence imposed by the district court.

## I. Background[1]

### A. Cordero-Velázquez's Arrest

On March 13, 2021, Cordero-Velázquez was in the passenger seat of a car driven by his friend, Tommy Louis Casillas-Negrón, heading in the direction of Casillas-Negrón's home. Around midnight, a Carolina Municipal Police officer in a marked police car conducted a traffic stop of Casillas-Negrón's car because the windows were "noticeably dark." The officer informed Casillas-Negrón that he was being pulled over because of the tinted windows and measured the window tint using a photometer. The windows were found to be too darkly tinted, in violation of

---

[1] Because "this appeal follows a guilty plea, our recitation of the facts is derived from '. . . the undisputed sections of the presentence investigation report[] and the transcripts of the change-of-plea and sentencing hearings.'" United States v. Calderon-Zayas, 102 F.4th 28, 32 (1st Cir. 2024) (quoting United States v. Spinks, 63 F.4th 95, 97 (1st Cir. 2023)).

Puerto Rico law, and the officer asked Casillas-Negrón for his license and registration.

Casillas-Negrón then reached for a fanny pack located near his right leg; the fanny pack was also within reaching distance of Cordero-Velázquez. Casillas-Negrón opened the fanny pack and retrieved his driver's license to give to the officer. In the process, the officer saw a firearm in the fanny pack. When the officer asked Casillas-Negrón if he had a firearm permit, Casillas-Negrón responded that he did not.

The officer, with the aid of back-up officers, then arrested Casillas-Negrón and Cordero-Velázquez. The Carolina Municipal Police ultimately recovered a Glock pistol loaded with a .40mm caliber round of ammunition in the chamber and eleven .40mm caliber rounds of ammunition in the magazine. The Glock pistol was modified with a chip so that it would operate fully automatically. They also recovered an additional twenty-two round capacity magazine loaded with another twenty .40mm caliber rounds of ammunition.

Casillas-Negrón and Cordero-Velázquez were read their Miranda rights and waived those rights. They each admitted to owning the firearm and to having knowledge that the firearm was modified to function as a fully automatic weapon. Cordero-Velázquez specifically admitted to previously using the

- 3 -

firearm; the last time he remembered doing so was on the prior New Year's Eve.

Cordero-Velázquez was later charged with a one-count indictment for illegal possession of a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).

### B. Violations of Supervised Release

After his arrest, on March 19, 2021, Cordero-Velázquez was released under the supervision of the U.S. Probation Office ("probation"). While on pretrial release, Cordero-Velázquez tested positive for marijuana and later admitted to smoking marijuana several times. Cordero-Velázquez explained to probation that he was utilizing marijuana to deal with the deaths of several family members in a short period of time. Probation then enrolled Cordero-Velázquez in an intensive phase of a drug testing program and also referred him to mental health treatment.

Late in August 2021, Cordero-Velázquez again tested positive for marijuana and admitted to consuming the same; he also failed to call the random drug testing program on six different occasions in August and September 2021. At that time, probation requested the issuance of a summons for a show-cause hearing. The court took no action as to these later violations prior to Cordero-Velázquez's sentencing hearing.

- 4 -

## C. Change of Plea and Sentencing

On August 3, 2021, the district court conducted a change-of-plea hearing, at which Cordero-Velázquez entered a straight guilty plea to the one-count indictment. Later, in preparation for sentencing and at the request of the district court, probation prepared a Presentence Investigation Report ("PSR"). After adjusting the offense level based on the characteristics of the offense and acknowledging Cordero-Velázquez's acceptance of responsibility, the PSR calculated a Total Offense Level ("TOL") of nineteen. The PSR also recognized that Cordero-Velázquez had a criminal history score of zero, which led to a Criminal History Category ("CHC") of I. Based on the TOL of nineteen and CHC of I, the PSR calculated a guidelines sentencing range ("GSR") of thirty to thirty-seven months' imprisonment under the United States Sentencing Guidelines.

In his sentencing memorandum, Cordero-Velázquez emphasized his remorse for taking part in the illegal conduct at issue and stressed that he wished "to become a more productive member of society by pursuing a career as a barber[.]" He also noted that he had "the support of his family" and believed the underlying cause of his behavior -- his recently diagnosed mental health conditions -- could now be addressed. Cordero-Velázquez asked the court to take notice of these mitigating factors, as

well as a mental health evaluation that Cordero-Velázquez also submitted.

The district court held a sentencing hearing on November 5, 2021. At sentencing, Cordero-Velázquez's counsel highlighted that during Cordero-Velázquez's pretrial release, he was able to obtain a GED and find employment. Cordero-Velázquez's counsel also noted his client's mental health struggles and the need for mental health treatment, which counsel believed could not be adequately provided in prison. Lastly, counsel again noted that Cordero-Velázquez's family was very supportive of him. With all of that in mind, Cordero-Velázquez asked for "a sentence of probation."

In response, the government acknowledged that Cordero-Velázquez pled "guilty without the benefit of a [p]lea [a]greement" and "he was honest on-scene" with law enforcement. Even so, the government argued that the court should also consider Cordero-Velázquez's marijuana use while he was on pretrial release and that he was a prohibited person and "not allowed to have a firearm" because of his mental health conditions. Accordingly, the government recommended a within-guidelines sentence of thirty-three months' imprisonment.

Ultimately, the district court agreed with the PSR as to Cordero-Velázquez's TOL of nineteen and his CHC of I. Thus, the district court found that the applicable GSR was thirty to

thirty-seven months' imprisonment. During sentencing, the district court noted that it had considered the 18 U.S.C. § 3553(a) factors, as well as Cordero-Velázquez's sentencing memorandum, both parties' arguments at the sentencing hearing, and the mental health evaluation Cordero-Velázquez submitted. The district court then recognized Cordero-Velázquez's repeated violations of his pretrial release. After recounting the facts, the district court ultimately determined "that neither sentence recommended by the parties reflects the seriousness of the offense, promotes respect for the law, protects the public from further crimes by [Cordero-Velázquez], nor does it address the issues of deterrence and punishment."

In determining the sentence, the district court supplied a number of reasons in support of why it thought Cordero-Velázquez needed a higher sentence than those recommended by the parties. First, the district court described machine guns as "highly dangerous and unusual weapons." The district court added that the guidelines "do not differentiate" between typical manufactured machine guns and modified machine guns, like the one present here. In describing the differences between these two types of machine guns, the district court stated:

> Machine pistols, like the one defendant possessed, are difficult, if not impossible, to control due to their recoil, or kickback. This recoil causes the muzzle of the machine gun to change its direction, which then puts

- 7 -

> the life or serious injury of people near the shooter's intended target in grave danger.
>
> Contrary to a manufactured machine gun, supports to counteract the recoil and control the weapon simply do not exist. Even more so, when the machine gun is in the hands of a shooter with no training to use it properly, a shooter's lack of training risks spraying helter skelter a large amount of bullets, especially from a fully loaded high capacity magazine like the one defendant possessed.

Because the district court disagreed with the guidelines' failure to acknowledge these differences, it determined that a variance under Kimbrough v. United States, 552 U.S. 85 (2007), was appropriate. The district court also considered the amount of ammunition present and "the serious and acute problem of gun violence in Puerto Rico." Lastly, the district court considered the "high rate of recidivism among firearm offenders." With these considerations in mind, the district court sentenced Cordero-Velázquez to forty-eight months' imprisonment, followed by three years of supervised release.

After the district court announced the sentence, Cordero-Velázquez's counsel objected to it on "procedural and substantive grounds, as to the length of the incarceration period" because "the [c]ourt has not made for the record specific articulable facts related to the offense other than[,] as the [c]ourt correctly notes, the criminal situation in Puerto Rico as allowed by Flores in the . . . First Circuit." And counsel

- 8 -

objected to the sentence because of the disparity between Cordero-Velázquez's sentence and the sentence given to his co-defendant, Casillas-Negrón.[2]  In response, the district court noted that this disparity occurred because Cordero-Velázquez was a prohibited person as a marijuana user and "a mental health patient" and therefore subject to a higher Base Offense Level ("BOL"), while Casillas-Negrón was not.

Cordero-Velázquez subsequently filed a timely notice of appeal as to the sentence imposed.[3]

## II. Discussion

On appeal, Cordero-Velázquez takes issue with several factors the district court considered at sentencing.  First, Cordero-Velázquez argues that the district court should not have considered that the machine gun at issue was a modified machine gun because that "is already accounted in the charge of conviction and the sentencing [g]uidelines."  Second, Cordero-Velázquez argues that the district court "failed to make an individual

---

[2]  Casillas-Negrón was sentenced to thirty-six months' imprisonment followed by a three-year term of supervised release.

[3] Cordero-Velázquez was released from incarceration in June 2024.  He is currently serving his term of supervised release. Cordero-Velázquez "thus continues to have a stake in the outcome of this appeal because 'if we were to determine that his incarcerative sentence was unreasonable, he could seek equitable relief.'"  United States v. Delgado, 106 F.4th 185, 191 n.2 (1st Cir. 2024) (cleaned up) (quoting United States v. Reyes-Barreto, 24 F.4th 82, 85 (1st Cir. 2022)).

assessment" of the circumstances here and instead relied on general factors such as "the Puerto Rico firearms problem," "the likelihood of recurrence of firearm offenders," and the effect of higher sentences in deterring firearm offenders. Cordero-Velázquez also launches two additional attacks on the sentence imposed: first, that there is an unwarranted sentencing disparity between his sentence and that given to his co-defendant; and second, that his sentence was "greater than necessary" because the district court "failed to give weight to [the] totality of the circumstances."

## A. Standard of Review

"Appellate review of claims of sentencing error entails a two-step pavane." United States v. Vaquerano Canas, 81 F.4th 86, 91 (1st Cir. 2023) (quoting United States v. Melendez-Rosado, 57 F.4th 32, 37 (1st Cir. 2023)). Typically, we first examine claims of procedural error and then assess claims of substantive unreasonableness. Id.

Preserved claims of sentencing error are reviewed for abuse of discretion. See United States v. Melendez-Hiraldo, 82 F.4th 48, 53 (1st Cir. 2023). "This is a multifaceted standard whereby 'we apply clear error review to factual findings, de novo review to interpretations and applications of the guidelines, and abuse of discretion review to judgment calls.'" Id. at 54 (quoting United States v. Nieves-Mercado, 847 F.3d 37, 42 (1st Cir. 2017)).

Unpreserved claims, on the other hand, are reviewed under our plain error standard. See id. "Plain error requires a defendant to show: '(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Cruz-Agosto, 102 F.4th 20, 24 (1st Cir. 2024) (quoting United States v. Lessard, 35 F.4th 37, 42 (1st Cir. 2022)).

## B. Procedural Reasonableness

Procedural errors can include "failing to calculate (or improperly calculating) the [g]uidelines range, treating the [g]uidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the [g]uidelines range." Melendez-Hiraldo, 82 F.4th at 53 (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). "During sentencing, a court must 'state in open court the reasons for its imposition of the particular sentence.'" United States v. Reyes-Correa, 81 F.4th 1, 10 (1st Cir. 2023) (quoting 18 U.S.C. § 3553(c)). When imposing an above-guidelines sentence, the sentencing court "must justify the upward variance." Id. (quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 176 (1st Cir. 2014)). "To successfully justify a variance, the court needs to 'articulate

why it believes that the defendant's case differs from the norm.'" Id. (cleaned up) (quoting Del Valle-Rodríguez, 761 F.3d at 177).

From his briefing, Cordero-Velázquez appears to shoehorn nearly all of the alleged errors as claims of procedural error (labeling only his claim that the sentence was "greater than necessary" as a substantive reasonableness challenge). At oral argument, however, Cordero-Velázquez affirmed that he was mounting both a procedural and a substantive reasonableness challenge. Where unclear, to Cordero-Velázquez's benefit and "out of 'an abundance of caution, we inspect his claims . . . through both lenses.'" United States v. Calderon-Zayas, 102 F.4th 28, 35-36 (1st Cir. 2024) (quoting United States v. Ruperto-Rivera, 16 F.4th 1, 5 (1st Cir. 2021)). Our first step is to assess which of Cordero-Velázquez's claims of procedural error are preserved for our review.

"[T]o preserve a claim of procedural sentencing error for appellate review, [a defendant's] objection need not be framed with exquisite precision." Reyes-Correa, 81 F.4th at 10 (quoting United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020)). "It must, however, 'be sufficiently specific to call the district court's attention to the asserted error.'" Id. (quoting United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017)). We take each of Cordero-Velázquez's procedural challenges in turn, while first addressing these preservation issues.

- 12 -

### 1. Improper Considerations at Sentencing

At sentencing, counsel for Cordero-Velázquez specifically objected on the grounds that "the [c]ourt has not made for the record specific articulable facts related to the offense other than as the [c]ourt correctly notes, the criminal situation in Puerto Rico as allowed by Flores in the . . . First Circuit." Counsel also added that the intention of submitting the mental health evaluation was to provide the court with mitigating factors. We find that the district court was thus properly put on notice that Cordero-Velázquez was challenging the district court's alleged reliance on only general sentencing factors and that Cordero-Velázquez was claiming that the district court's considerations were not sufficiently particularized to Cordero-Velázquez's circumstances. See Reyes-Correa, 81 F.4th at 10. For these preserved claims, "we will 'review the district court's justification for varying upward under the familiar abuse-of-discretion standard.'" Id. (quoting United States v. Serrano-Berríos, 38 F.4th 246, 250 n.1 (1st Cir. 2022)).

But we find no reference in the record below to Cordero-Velázquez's argument that the district court should not have considered that the machine gun at issue was a modified machine gun because that "is already accounted in the charge of conviction and the sentencing [g]uidelines." Nor do we think that such an argument can be inferred from the objections that

Cordero-Velázquez did assert.  Thus, that challenge can be reviewed only under our plain-error standard.  That conclusion is fatal to this argument because Cordero-Velázquez "'does not attempt to satisfy that standard of review' in his opening brief." Melendez-Hiraldo, 82 F.4th at 54 (quoting United States v. Rodriguez-Monserrate, 22 F.4th 35, 40 (1st Cir. 2021)).  This unpreserved claim has thus been waived before this court.[4]

We now turn back to the remaining preserved argument regarding the district court's alleged generalized considerations at sentencing.  Cordero-Velázquez points to several factors that he believes were too general for the court to consider in his sentencing, including: "the Puerto Rico firearms problem"; "the likelihood of recurrence of firearm offenders"; and the effect of higher sentences in deterring firearm offenders.

---

[4] Even if this claim of error were reviewable at this juncture, Cordero-Velázquez failed to address, in his opening brief, the district court's reasoning for considering the modification of the machine gun at issue.  Although Cordero-Velázquez recognizes that the district court upwardly varied, in part, because of its disagreement with the guidelines' computations as to the guidelines' treatment of modified machine guns, he does not address the district court's Kimbrough rationale.  Indeed, Cordero-Velázquez failed to present any developed argumentation as to how a Kimbrough variance should or should not apply and failed to cite Kimbrough with respect to this issue nor does he do so anywhere in his reply brief.  Thus, this argument is waived before us regardless of the applicable standard of review.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones").

We pause our substantive review to address another procedural snafu in relation to this challenge. Although we find that Cordero-Velázquez put the district court on notice that he objected to its consideration of generalized factors, he seems to have conceded below that the district court was permitted to consider one of the factors he now challenges on appeal. It is somewhat unclear what Cordero-Velázquez's counsel was referring to at the sentencing hearing when they stated that "the [c]ourt has not made for the record specific articulable facts related to the offense other than[,] as the [c]ourt correctly notes, the criminal situation in Puerto Rico as allowed by Flores in the . . . First Circuit." (Emphasis added.) The only plausible reading we can gather from the transcript is that Cordero-Velázquez's counsel was referring to our decision in United States v. Flores-Machicote, where we held that "it is permissible for a sentencing court to consider the incidence and trend lines of particular types of crime in the affected community."[5]  706 F.3d 16, 23 (1st Cir. 2013). Counsel, therefore, appears to have stated that the district court's only proper, particularized considerations were the community factors outlined in Flores-Machicote.

---

[5] Our understanding is also supported by Cordero-Velázquez's opening brief, which specifically cites to Flores-Machicote in discussing this issue.

Thus, it appears that any argument that the district court did not appropriately apply Flores-Machicote or that its considerations fell outside of Flores-Machicote were affirmatively waived below, as Cordero-Velázquez appears to have "intentionally relinquish[ed] or abandon[ed]" that argument. See United States v. Hansen, 434 F.3d 92, 101 (1st Cir. 2006). The only feasible consideration that the district court articulated that may fall into this Flores-Machicote bucket is "the Puerto Rico firearms problem," which Cordero-Velázquez now attempts to challenge on appeal. In light of Cordero-Velázquez's counsel's seeming concession at sentencing -- that it was proper, under Flores-Machicote for the district court to consider Puerto Rico's "firearms problem" -- we think this argument was likely affirmatively waived below.[6]

Regardless of this apparent waiver, even though the district court "may have lingered longer than necessary on community characteristics," it then discussed further individualized characteristics as related to Cordero-Velázquez and the circumstances at issue. See Flores-Machicote, 706 F.3d at 24. For example, the district court noted that not only did Cordero-Velázquez admit to previously firing this weapon, but he

---

[6] "Waiver is distinct from forfeiture, which occurs when a party fails to timely assert a right, in that a forfeited issue is reviewed for plain error while a waived issue generally may not be reviewed." Hansen, 434 F.3d at 101.

- 16 -

and Casillas-Negrón also "illegally shared" the weapon, "adding to the already pervasive problem of illegal possession of machine guns in Puerto Rico."

By our count, what remains of Cordero-Velázquez's procedural challenge to the district court's alleged improper considerations is his argument that the district court's reliance on "high recidivism of firearms offenders" and "the deterrence effect of higher sentences to firearm offenders" was not sufficiently individualized to Cordero-Velázquez's circumstances. This court has reiterated "the requirement that an upward variance be moored to individual characteristics of either the offender or the offense of conviction." Melendez-Hiraldo, 82 F.4th at 55 (cleaned up) (quoting United States v. Flores-Nater, 62 F.4th 652, 656 (1st Cir. 2023)). As to the adequacy of the rationale, it will "pass[] muster if it identifies 'idiosyncratic facts that remove the case from the heartland of the applicable guideline provisions.'" Id. (cleaned up) (quoting United States v. Bruno-Campos, 978 F.3d 801, 806 (1st Cir. 2020)).

Here, the district court made additional individualized findings.[7] The court discussed Cordero-Velázquez's "history of

---

[7] At this time, we take no view on the propriety of the district court's sentencing rationale related to the dangerousness of modified machine guns or the issue of gun violence in Puerto Rico; as noted above, any challenge to these considerations was waived.

using marijuana" and his repeated violations of the conditions of his pretrial release. Further, in addition to acknowledging Cordero-Velázquez's admissions that he previously fired the weapon and shared it with Casillas-Negrón, the district court also pointed to the amount of ammunition and high-capacity magazines present here.[8]

Although Cordero-Velázquez claims that the district court also did not consider his "personal circumstances" or "his emotional crisis as evidenced by the expert in the case," the district court repeatedly noted that he had reviewed the mental health evaluation and considered it for sentencing. Cf. United States v. Robles-Alvarez, 874 F.3d 46, 52 (1st Cir. 2017) (finding sentence procedurally unreasonable where "the district court[] fail[ed] to address, or even acknowledge, the appellant's potentially persuasive argument for a downward variance"). The district court also specifically recognized that Cordero-Velázquez achieved his GED and had a positive employment history. Paired

---

[8] Cordero-Velázquez did not, in his opening brief or before the district court, argue that the amount of ammunition present here does not take this case out of the mine-run of ordinary machine gun possession cases. Because this argument was raised before us only in his reply brief, we take no view on this issue. See United States v. Evans-Garcia, 322 F.3d 110, 114 (1st Cir. 2003) ("Arguments raised for the first time in reply briefs are generally deemed waived."). We merely note that in prior cases we have found higher amounts of ammunition to be "entirely consistent with simple possession of a machine gun." United States v. Rivera-Berríos, 968 F.3d 130, 133, 135 (1st Cir. 2020) (finding thirty-six rounds of ammunition was not a "large cache").

with the individualized considerations described above, these statements emphasize that the district court's sentence was based on Cordero-Velázquez's specific circumstances. All of the potentially mitigating factors presented on appeal were also before the district court at sentencing, and we have no reason to conclude that the district court overlooked them. See United States v. Cortés-Medina, 819 F.3d 566, 570-71 (1st Cir. 2016) (finding that potentially mitigating factors "were vigorously pressed by defense counsel" at sentencing and "[t]here [was] not the slightest reason to think that the district court overlooked them").

For these reasons, we find that "the district court's explanation is grounded in 'case specific considerations,'" such that its considerations were sufficiently individualized and procedurally sound. See United States v. Politano, 522 F.3d 69, 74 (1st Cir. 2008) (quoting United States v. Martin, 520 F.3d 87, 96-97 (1st Cir. 2008)).

### 2. Sentencing Disparity

The guidelines direct district courts to consider in sentencing "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "While this instruction 'is primarily aimed at national disparities,' it also permits consideration of disparities among co-defendants."

Robles-Alvarez, 874 F.3d at 52 (quoting United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015)).

We have found procedural error when a district court has failed to address or acknowledge a defendant's argument related to a sentencing disparity between that defendant and their co-defendants. Id. at 52-53. That is simply not the case here. In response to Cordero-Velázquez's objection, the district court stated that Cordero-Velázquez was different than his co-defendant in that Cordero-Velázquez was a prohibited person and therefore subject to a different BOL. The district court did exactly what it was required to do: "where the defendant 'presents nonfrivolous reasons for imposing a different sentence, the judge will normally go further and explain why [they have] rejected those arguments.'" See id. at 52 (cleaned up) (quoting Rita v. United States, 551 U.S. 338, 357 (2007)). Cordero-Velázquez has offered no evidence to the contrary.

Therefore, to the extent Cordero-Velázquez is asserting a procedural error in the court's failure to address the co-defendant disparity, we find that this argument fails. In an abundance of caution, we also address Cordero-Velázquez's sentencing disparity argument under our substantive reasonableness framework below.

## C. Substantive Reasonableness

"[W]e have consistently held that by arguing for a shorter sentence before the district court, a defendant preserves a challenge to the substantive reasonableness of his sentence on appeal." Melendez-Hiraldo, 82 F.4th at 56. We therefore review this preserved challenge under our abuse-of-discretion standard. See United States v. Diaz-Serrano, 77 F.4th 41, 47 (1st Cir. 2023). When reviewing claims alleging substantive unreasonableness, we "bear in mind that '. . . considerable deference is due to the district court's judgment.'" Vaquerano Canas, 81 F.4th at 94 (cleaned up) (quoting United States v. de Jesús, 831 F.3d 39, 42 (1st Cir. 2016)).

"[T]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes." Id. (quoting United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011)). "Our review is limited to determining whether the district court's sentence, in light of the totality of the circumstances," is within that reasonable universe. Melendez-Hiraldo, 82 F.4th at 53 (cleaned up) (quoting United States v. Rossignol, 780 F.3d 475, 477 (1st Cir. 2015)). "A sentence is substantively reasonable if the district court provided a 'plausible sentencing rationale and reached a defensible result.'" Vaquerano Canas, 81 F.4th at 94 (quoting United States v. Ouellette, 985 F.3d 107, 111 (1st Cir. 2021)).

### 1. Totality of the Circumstances

Cordero-Velázquez argues that the district court "failed to give weight to [the] totality of the circumstances" by not considering that he was a first-time offender, that he was not carrying the weapon at the time of the arrest, that he cooperated with the authorities, and that he was struggling with mental health conditions.

When reviewing an upwardly variant sentence, "we 'give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance.'" United States v. Ríos-Rivera, 913 F.3d 38, 46 (1st Cir. 2019) (quoting Gall, 552 U.S. at 51). "Where, as here, a court has correctly calculated the GSR, 'sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be precisely described.'" United States v. Guzman-Fernandez, 824 F.3d 173, 178 (1st Cir. 2016). In deciding whether the district court employed a plausible rationale for the sentence, we have noted that "an adequate explanation for an upward variance and a plausible rationale for that variance are almost always two sides of the same coin." United States v. Valle-Colón, 21 F.4th 44, 50 (1st Cir. 2021).

As described above, the district court provided an adequate explanation for its sentence, and we see no reason to

belabor our discussion of the district court's plausible rationale, so we only quickly summarize here. The sentencing court based its variant sentence on many factors including: the modification of the machine gun, the high rate of firearms crimes in Puerto Rico, the high recidivism rate of firearms offenders, the prior use and sharing of the firearm at issue, Cordero-Velázquez's history of marijuana use, and the amount of ammunition and high-capacity magazines recovered here. Cordero-Velázquez does not present any developed argumentation as to why the district court's consideration of these factors constitutes error. Thus, with these factors in mind, we find the district court's rationale was plausible.

Cordero-Velázquez further argues that "the sentencing court penalized [him] for his [mental health] condition," instead of treating that as a mitigating factor. First, we note that "[s]imply because the court did not weigh [certain factors] as [Cordero-Velázquez] would have liked 'does not undermine the plausibility of the sentencing rationale.'" Vaquerano Canas, 81 F.4th at 95 (cleaned up) (quoting United States v. Coombs, 857 F.3d 439, 452 (1st Cir. 2017)). Second, we believe Cordero-Velázquez is misconstruing the district court's sentencing rationale. We find no evidence in the record that the district court "penalized" Cordero-Velázquez for his mental health condition. Instead, what the record reveals is that the district

- 23 -

court explained to Cordero-Velázquez that because he was a "mental health patient," Cordero-Velázquez was considered a "prohibited person" and subject to a higher BOL than Casillas-Negrón. Cordero-Velázquez never challenged the finding that he was a prohibited person or objected to his BOL.[9] Thus, we find that the district court properly explained to Cordero-Velázquez the reasoning for his different BOL, and this explanation did not affect the plausibility of the sentencing rationale.

---

[9] Because Cordero-Velázquez does not challenge this aspect of his sentencing, we do not consider whether the district court correctly determined that Cordero-Velázquez was a prohibited person. We pause to note, however, that 18 U.S.C. § 922(g)(4) prohibits from possessing firearms only those "who ha[ve] been adjudicated as a mental defective or who ha[ve] been committed to a mental institution"; it does not extend to every person who experiences a mental health issue or receives a mental health diagnosis. Our review of the record does not reveal that Cordero-Velázquez was ever committed to a mental health institution or "adjudicated as a mental defective."

As to Cordero-Velázquez's status as a "drug user," the relevant statute and guidelines apply only to those who are "an unlawful user of or addicted to any controlled substance," 18 U.S.C. § 922(g)(3), "at the time the defendant committed the instant offense," U.S.S.G. § 2K2.1(a)(4)(B). Thus, any unlawful drug use after arrest when on pre-trial release is irrelevant to a defendant's status as a prohibited person. However, the record reveals that Cordero-Velázquez reportedly obtained a medical marijuana card at age twenty-six and was using marijuana pursuant to a prescription prior to his arrest. Cordero-Velázquez did not argue that his drug use prior to arrest was lawful or request that the district court consider the medical nature of his drug use when fashioning an appropriate sentence. Because Cordero-Velázquez did not make these arguments, we do not address them here.

The length of the sentence here is also defensible. We recognize that the sentence was significantly longer than the sentences the parties recommended. No additional period of imprisonment is insignificant to the incarcerated, particularly one that is 11 months over the top of the GSR, amounting to an approximately 30% upward variance. See United States v. Colón-Cordero, 91 F.4th 41, 53 (1st Cir. 2024) (finding that nine months of additional imprisonment "would readily be understood as a significant time period by any reasonable measure"). However, the variance here is consistent with others that we have previously upheld as substantively reasonable when supported by a plausible rationale. See Guzman-Fernandez, 824 F.3d at 178-79 (collecting cases); see also United States v. Carvajal, 85 F.4th 602, 615 (1st Cir. 2023) (utilizing a percentage basis when comparing upward variances in different cases). Ultimately, while the 48-month sentence here may seem long given the circumstances, we cannot say that it "is 'outside the universe of reasonable sentences for an offense with a statutory maximum of 120 months.'" See United States v. Pedroza-Orengo, 817 F.3d 829, 837 (1st Cir. 2016) (quoting United States v. Paulino-Guzman, 807 F.3d 447, 451 (1st Cir. 2015)).

## 2. Sentencing Disparity

Cordero-Velázquez seems to also argue on appeal that his co-defendant, Casillas-Negrón, was more culpable than he was

because Casillas-Negrón was "the one that had the firearm in his possession and [was] the owner of the same," while Cordero-Velázquez "only loaned it from him."  He also states that the fact that he "was a drug user and a mental [health] patient" was not sufficient justification for the court to treat him differently than Casillas-Negrón in sentencing.

We again note that "[w]hen crafting a sentence, the court must consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"  Diaz-Serrano, 77 F.4th at 48 (quoting 18 U.S.C. § 3553(a)(6)).  "While 'this provision is primarily aimed at national disparities,' a sentence may be substantively unreasonable if 'two identically situated defendants receive different sentences from the same judge.'"  Id. (quoting Reyes-Santiago, 804 F.3d at 467).

"[A]s a general matter, 'a defendant is not entitled to a lighter sentence merely because [their] co-defendants received lighter sentences.'"  Robles-Alvarez, 874 F.3d at 53 (quoting Reyes-Santiago, 804 F.3d at 467).  Further, a defendant must show that "the more leniently sentenced co-defendant [was not] materially different [from the defendant] in any respect that could influence the court's sentencing decision."  Diaz-Serrano, 77 F.4th at 48.  "Establishing a co-defendant as an appropriate comparator may be a challenge given 'the myriad factors that come

into play at sentencing.'" Id. (quoting Reyes-Santiago, 804 F.3d at 467).

There are certainly many commonalities between Cordero-Velázquez and Casillas-Negrón, including that they both pled guilty to substantially the same conduct. In a vacuum, it may seem as though their sentences should be similar. However, the district court identified at least one major reason why they were dissimilar: Cordero-Velázquez was a prohibited person under the guidelines, where Casillas-Negrón was not. Cordero-Velázquez does not provide any argument as to why this was not sufficient to make his co-defendant an inappropriate comparator. We also identify other differences in the record between the pair: Cordero-Velázquez admitted to previously firing the weapon at issue; and he also repeatedly violated the conditions of his pretrial release. These were factors considered by the district court at sentencing.

Thus, "[b]ecause the district court had a supportable[, unchallenged] basis for the perceived inconsistency in sentencing, [Cordero-Velázquez's] claim that his sentence was substantively unreasonable based on an unwarranted sentencing disparity fails." See id. at 49.

### III. Conclusion

For the foregoing reasons, we affirm the sentence imposed by the district court.