# United States Court of Appeals
## For the First Circuit

No. 24-1746

UNITED STATES,

Appellee,

v.

ONIC MALDONADO-VELAZQUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Montecalvo, Aframe, and Dunlap,
Circuit Judges.

José R. Gaztambide-Añeses on brief for appellant.

W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, on brief for appellee.

January 16, 2026

**DUNLAP**, **Circuit Judge**.    Defendant-Appellant Onic Maldonado appeals from the district court's judgment imposing a ninety-six-month sentence for possessing machine guns and being a felon in possession of firearms.    Mr. Maldonado argues that his sentence is procedurally and substantively unreasonable because the district court did not adequately explain its reasons for an eighteen-month upward variance, base its sentence on a plausible sentencing rationale, or properly weigh mitigating factors concerning his personal characteristics.    After careful consideration, we conclude that the district court did not err. We therefore affirm.

## I.

In September 2022, police received a tip from a confidential source that Mr. Maldonado was armed on the roof of a public housing building.    Upon arriving to the scene, police announced their presence, and Mr. Maldonado jumped off the roof. Officers found Mr. Maldonado injured on the ground.    He told officers that he had three firearms on the roof from which he jumped.    On the roof, officers found 2 Glock firearms that were modified to shoot automatically, a tactical rifle, a micro conversion kit, 3 standard magazines, 7 high-capacity magazines, and 279 rounds of assorted caliber ammunition.    At the time, Mr. Maldonado was serving a term of supervised release for a prior firearm-possession conviction.

- 2 -

Mr. Maldonado pled guilty to possessing machine guns in violation of 18 U.S.C. §§ 922(o) and 924(a)(2) and being a felon in possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). At sentencing, the court assessed a guidelines range of sixty-three to seventy-eight months' imprisonment, based on a total offense level of twenty-five and criminal history category of II. Mr. Maldonado requested a sentence of sixty-three months, emphasizing improvements to his mental health since his arrest and calling into question the evidence underlying his offenses. The government, on the other hand, requested a sentence of seventy-eight months, highlighting Mr. Maldonado's criminal history, including a prior firearm-possession conviction for which he was serving a term of supervised release at the time of his arrest, as well as his possession of two machine guns and a large amount of ammunition and numerous magazines in the instant offenses.

The court stated that it considered the Section 3553(a) sentencing factors, presentence investigation report, plea agreement, memoranda and arguments of both parties, and Mr. Maldonado's allocution. It then described Mr. Maldonado's personal background, including his "high school education," lack of employment "due to his mental health disabilities," receipt of "Social Security Disability Income," "history of using marijuana . . . and medications without prescriptions," and

- 3 -

diagnosis of "an unspecific bipolar disorder" after a 2021 mental health assessment. The court further "considered that Mr. Maldonado, after having been treated at a [Bureau of Prisons] facility," appeared to have "improved his mental situation."

Recounting the offenses, the court explained that Mr. Maldonado told police that "he had two guns and a rifle on the rooftop from which he jumped." When police inspected the rooftop, they observed various contraband. The court emphasized that Mr. Maldonado "possessed machine guns," which it characterized as "highly dangerous and unusual weapons that are not typically possessed by law-abiding citizens for lawful purposes."

After considering the parties' recommended sentences, the court recounted several factors warranting a higher sentence. First, the court detailed the various contraband that Mr. Maldonado admitted he possessed, including "9-millimeter, .223 caliber, and .56 caliber ammunition, a total of 279 rounds; ten magazines, some of which are of extended capacity, of different calibers; two machine guns; and a micro-conversion kit." The court also highlighted Mr. Maldonado's prior firearm-possession conviction for which he "was serving a term of supervised release" at the time of his offense. Finally, the court explained that "Mr. Maldonado did not just have these firearms, magazines, and ammunition stored away. He was actively surveilling the rooftop of the public housing project building . . . ." The court

concluded that, upon "balancing all the . . . factors" under 18 U.S.C. § 3553, "a sentence above the guideline range reflects the seriousness of Mr. Maldonado's offense, promotes respect for the law, protects the public from additional crimes by Mr. Maldonado, and addresses the issues of deterrence and punishment." It therefore sentenced Mr. Maldonado to ninety-six months' imprisonment -- eighteen months above the upper end of the guideline range.

Counsel for Mr. Maldonado asked the court to reconsider the sentence, questioning certain evidence underlying his convictions and arguing that the sentence "does not follow . . . the guidelines" or account for Mr. Maldonado's "positive" changes while incarcerated. The court denied counsel's request, reiterating that it "did take into consideration" the "positive changes" made by Mr. Maldonado but also considered other factors not reflected in the guidelines, including Mr. Maldonado's "previous . . . firearms conviction" and possession of 279 rounds of ammunition during the instant offense. Counsel objected no further.

Mr. Maldonado timely appealed, challenging both the procedural and substantive reasonableness of his sentence.

## II.

When confronting a challenge to the reasonableness of a sentence, "[o]ur review process is bifurcated: we first determine

whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Flores-Quiñones, 985 F.3d 128, 133 (1st Cir. 2021) (alteration in original) (quoting United States v. Reyes-Torres, 979 F.3d 1, 6-7 (1st Cir. 2020)).  We analyze each in turn.

"We review preserved challenges" to a sentence "for abuse of discretion and unpreserved ones for plain error."  United States v. Cruz-Ramos, 987 F.3d 27, 44 (1st Cir. 2021).  "[T]o preserve a claim of procedural sentencing error," a defendant must make an objection that is "sufficiently specific to call the district court's attention to the asserted error."  United States v. Cordero-Velázquez, 124 F.4th 44, 52 (1st Cir. 2024) (alteration in original) (quoting United States v. Reyes-Correa, 81 F.4th 1, 10 (1st Cir. 2023)).  Meanwhile, a defendant can "preserve[] a challenge to the substantive reasonableness of his sentence" by, for example, "arguing for a shorter sentence before the district court."  United States v. Polaco-Hance, 103 F.4th 95, 103 (1st Cir. 2024) (quoting United States v. Melendez-Hiraldo, 82 F.4th 48, 56 (1st Cir. 2023) (internal quotation marks omitted)).  In this case, we need not decide what challenges Mr. Maldonado preserved because, even if we assume all of them are preserved and that abuse-of-discretion review therefore applies, his arguments fail.  See id. at 103.

- 6 -

### A. Procedural Reasonableness

A court "commits a procedural error" where it "fail[s] to adequately explain" a "deviation from the [g]uidelines range." United States v. Pupo, 995 F.3d 23, 28 (1st Cir. 2021) (quoting United States v. Díaz-Rivera, 957 F.3d 20, 25 (1st Cir. 2020)). When imposing an upward variance, the court "must make clear which specific facts of the case motivated its decision and why those facts led to its decision." United States v. Flores-Nater, 62 F.4th 652, 657 (1st Cir. 2023) (emphasis in original) (quoting United States v. Muñoz-Fontanez, 61 F.4th 212, 215 (1st Cir. 2023)). In particular, it must explain the variance based on "factors not adequately accounted for in the [guidelines]," United States v. Valle-Colón, 21 F.4th 44, 48 (1st Cir. 2021) (quoting United States v. Díaz-Lugo, 963 F.3d 145, 156 (1st Cir. 2020)), and "articulate why it believes that the defendant's case differs from the norm," United States v. Cordero-Velázquez, 124 F.4th 44, 51-52 (1st Cir. 2024) (quoting Reyes-Correa, 81 F.4th at 10). The court's explanation can be express or drawn "by fair inference from the sentencing record." United States v. Montero-Montero, 817 F.3d 35, 38 (1st Cir. 2016).

The district court met this standard by specifying which facts motivated its upward variance and why. Mr. Maldonado correctly notes that the dangerous nature of a machine gun cannot alone provide an adequate basis for an upward variance. See

Polaco-Hance, 103 F.4th at 101. But here, the court "appropriately emphasized the dangerousness" of Mr. Maldonado's machine guns "alongside other, case-specific factors," id. at 101, 105, including: (1) Mr. Maldonado's possession of 279 rounds of ammunition, 10 magazines (including 7 of high capacity), more than 1 machine gun, and a micro-conversion kit; (2) his commission of the instant offense while on supervised release for another firearm-possession conviction; and (3) the fact that "Mr. Maldonado did not just have these firearms, magazines, and ammunition stored away" but "was actively surveilling the rooftop" with them. Because the court did not give dispositive weight to the inherent dangerousness of machine guns, but rather considered it along with "other valid and individualized factors," Polaco-Hance, 103 F.4th at 102, the court did not err. See United States v. Fargas-Reyes, 125 F.4th 264, 276 (1st Cir. 2025).

And the other factors identified by the court were indeed valid considerations. As an initial matter, "[w]e have held repeatedly that the amount of ammunition and the number of extended magazines . . . can be valid bases for an upward variance for firearms offenses." United States v. Mercado-Cañizares, 133 F.4th 173, 181 (1st Cir. 2025) (omission in original) (quoting Polaco-Hance, 103 F.4th at 101). That is because where an offense involves "substantial quantities of ammunition, and/or multiple high-capacity magazines," a court's "concerns about the

seriousness of such firepower and such substantial quantities of ammunition . . . suffice[] to remove [a] case from the heartland of the relevant guidelines." United States v. Bruno-Campos, 978 F.3d 801, 806 (1st Cir. 2020); see United States v. García-Mojica, 955 F.3d 187, 193, 193 n.7 (1st Cir. 2020) (explaining that court properly considered "extra ammunition" as basis for upward variance because it "contributed to the lethalness of the automatic weapon" and was not contemplated by the relevant guideline). Here, while the applicable guideline contemplates the type of firearm possessed (a machine gun) and Mr. Maldonado's "prohibited" status, it says nothing about the amount of ammunition possessed. See United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(a)(4)(B). Nor did any enhancement considering that factor apply to Mr. Maldonado's offense level.[1] Because the guidelines "d[id] not account" for the "ammunition involved in [the] offense," an upward variance was justified. United States v. Rosario-Merced, 109 F.4th 77, 82-83 (1st Cir. 2024).

Mr. Maldonado contends that because "[i]t is expected" to find ammunition with firearms, this factor is "already accounted for in the guidelines" and cannot justify an upward variance.

---

[1] Mr. Maldonado received enhancements because his offenses involved three firearms, one of the firearms was stolen, and he used a firearm or ammunition in connection with another felony offense. None of these enhancements considered the amount of ammunition involved in his offenses.

Although this contention holds true when the quantity of ammunition is "consistent with simple possession," where, as here, the quantity of ammunition exceeds that amount, "[o]ur precedent is clear that sentencing courts may consider the amount of ammunition to be an aggravating factor, one not already accounted for by the guidelines."[2] United States v. Morales-Veléz, 100 F.4th 334, 344 (1st Cir. 2024). And we have affirmed upward variances in firearm-possession cases involving substantially less ammunition. See, e.g., id. at 340-41, 345 (affirming sixty-month upward variance where defendant "possessed not only a machine gun but four magazines, [two] of which were high capacity, and 125 rounds of radically invasive projectiles" (alteration in original)); Polaco-Hance, 103 F.4th at 100, 104, 106 (affirming twenty-one-month upward variance where defendant possessed "111 rounds of ammunition and five magazines, four of which were extended and all of which were loaded"); United States v. Rivera-Santiago, 919 F.3d 82, 83-86 (1st Cir. 2019) (affirming eleven-month upward variance where defendant possessed two empty large-capacity magazines and 127 rounds of ammunition); Mercado-Cañizares, 133 F.4th at 181 (concluding that the "amount

_____

[2] For example, in United States v. Rivera-Berríos, we determined that a defendant's possession of just 36 rounds of ammunition and 2 magazines -- far fewer than the 279 rounds of ammunition and 10 magazines (7 of which were high capacity) involved here -- "was entirely consistent with simple possession of a machine gun." 968 F.3d 130, 133, 135 (1st Cir. 2020).

of ammunition at issue . . . (seventy-four rounds and two extended magazines) [was] independently sufficient to support the district court's 30% upward variance").  In light of this precedent, the district court properly based its upward variance on the 279 rounds of ammunition and 10 magazines (7 of which were high capacity) that Mr. Maldonado possessed at the time of his arrest.

On their own, the large amount of ammunition and number of magazines Mr. Maldonado possessed likely would be "independently sufficient to support" the court's modest upward variance.  Id. But the court also identified several other factors "not adequately captured by the guideline range" that lend further support to its decision.  See United States v. Waithe, 150 F.4th 16, 27 (1st Cir. 2025).  For instance, although the applicable guideline contemplates Mr. Maldonado's possession of a machine gun, see U.S.S.G. § 2K2.1(a)(4)(B), plus a two-level enhancement for possessing "three or more firearms," see id. § 2K2.1(b)(1)(A), neither provision considers his possession of multiple machine guns, which the sentencing court distinguished from the average firearm as being "highly dangerous and unusual weapons."  See Fargas-Reyes, 125 F.4th at 275 (concluding that Sections 2K2.1(a) and (b) do not contemplate the possession of multiple machine guns).  And while Mr. Maldonado's criminal history category generally accounts for his prior convictions, it does not specifically contemplate that he committed the instant offense

- 11 -

while serving a term of supervised release for another firearm-possession conviction, suggesting more need for deterrence. See Rivera-Santiago, 919 F.3d at 85-86 (explaining that defendant's commission of offense "while on supervised release for essentially the same offense" was factor that "differentiate[d] [the defendant's] offense from the 'run-of-the-mill' felon-in-possession offense contemplated by the guidelines"). Finally, the court highlighted the unusually threatening nature of Mr. Maldonado's conduct given that he did not merely possess firearms and ammunition but possessed them while "actively surveilling the rooftop" of a public housing building.

We have affirmed upward variances in similar circumstances. For example, in Fargas-Reyes, the defendant likewise pled guilty to "possessing firearms and ammunition as a convicted felon" while on supervised release for another firearm offense. 125 F.4th at 267-68. We affirmed a thirty-three-month upward variance, reasoning that the defendant's possession of two machine guns and large amounts of ammunition just months "after leaving prison on supervised release for another machine[ ]gun-possession crime" "remove[d] [his] case from the heartland of the applicable guideline[s] provisions." Id. at 275-76 (last two alterations in original) (quoting Díaz-Lugo, 963 F.3d at 155).

Similarly, in Polaco-Hance, we affirmed a twenty-one-month variance for a defendant who was arrested for two

firearm-possession offenses while on supervised release for prior federal convictions.  103 F.4th 95 at 97-98, 104.  We reasoned that the court properly based the variance, like here, on the defendant's "machine[ ]gun possession [] alongside other, case-specific factors, namely, the large cache of ammunition and the high-capacity magazines [the defendant] had when he was arrested" and "a heightened need for deterrence" because the defendant committed the new offenses shortly after his release from prison.  Id. at 101–02.  Although the government sought an upward variance in Polaco-Hance, the government's choice not to do so here does not render the upward variance unreasonable. Notably, in Polaco-Hance, the court still imposed a sentence twelve months above the government's recommendation.  Polaco-Hance, 103 F.4th at 99–100.  And in any event, the court here was not bound by the parties' agreement to seek a sentence within the guidelines range.  See United States v. Rodríguez-Reyes, 925 F.3d 558, 569 (1st Cir. 2019).  The "choice by the district court of a sentence other than" those "recommended by the parties is not, in itself, error."  Id.

## B.    Substantive Reasonableness

We turn next to whether the district court's sentence was substantively reasonable.  Under an abuse of discretion standard, "considerable deference" must "be given to the district court's judgment," United States v. Contreras-Delgado, 913 F.3d 232, 239

- 13 -

(1st Cir. 2019), because "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes," United States v. Burgos, 133 F.4th 183, 195 (1st Cir. 2025) (quoting Polaco-Hance, 103 F.4th at 104). "[O]ur task is simply to determine whether the sentence falls within this broad universe." Id. (alteration in original) (quoting United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020)).

"[T]he key inquiry is whether the sentencing court has articulated a plausible rationale and reached a defensible result." United States v. Colón-De Jesús, 85 F.4th 15, 26 (1st Cir. 2023) (quoting United States v. De Jesús-Torres, 64 F.4th 33, 40 (1st Cir. 2023)). "When, as here, the district court imposes a sentence above the guideline sentencing range, it 'must justify a variance of the magnitude in question, . . .' and 'the rationale underlying the upward variance should be rooted either in the nature and circumstances of the offense or the characteristics of the offender.'" Polaco-Hance, 103 F.4th at 104 (first quoting United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008); and then quoting Flores-Nater, 62 F.4th at 656–57). The court must also "articulate specifically the reasons that th[e] particular defendant's situation is different from the ordinary situation covered by the guidelines calculation." Id. (quoting United States v. Guzman-Fernandez, 824 F.3d 173, 177 (1st Cir. 2016)).

The district court did not err in imposing a ninety-six-month sentence, reflecting an eighteen-month upward variance. As we have explained, the court properly identified several "aggravating factors not already accounted for by the guidelines" that supported a variance. Id. Those included Mr. Maldonado's possession of especially large amounts of ammunition, his commission of the instant offense while on supervised release for a prior firearm conviction, and the fact that he was "actively surveilling the rooftop" with the firearms. Based on these facts, the court reasonably concluded that a sentence within the guideline range would not sufficiently promote the Section 3553(a) sentencing factors of "promot[ing] respect for the law," "protect[ing] the public from additional crimes by Mr. Maldonado," and "address[ing] the issues of deterrence and punishment." The court thus "articulated a plausible rationale and reached a defensible result," Colón-De Jesús, 85 F.4th at 26 (quoting De Jesús-Torres, 64 F.4th at 40), rooted in facts that distinguish Mr. Maldonado and his offense from the typical firearm-possession case.

Mr. Maldonado's sentence "falls within th[e] broad universe" of "reasonable sentencing outcomes." Burgos, 133 F.4th at 195 (first quoting Rivera-Morales, 961 F.3d at 21; and then quoting Polaco-Hance, 103 F.4th at 104). Although "[n]o additional period of imprisonment is insignificant to the

incarcerated," the approximately 20% upward variance imposed by the court "is consistent with others that we have previously upheld as substantively reasonable when supported by a plausible rationale." Cordero-Velázquez, 124 F.4th at 57. While Mr. Maldonado surely would have preferred a different result, we decline to "substitute his judgment for that of the sentencing court." Rivera-Morales, 961 F.3d at 21 (quoting United States v. Vargas-García, 794 F.3d 162, 167 (1st Cir. 2015)).

Mr. Maldonado contends, however, that the district court improperly weighed the sentencing factors by giving greater weight to negative factors and disregarding mitigating factors.[3] "[W]e note that the sentencing court has discretion over the weighing of § 3553(a) factors and we 'will not disturb a well-reasoned decision to give greater weight to particular sentencing factors over others.'" United States v. Santiago-Lozada, 75 F.4th 285, 296 (1st Cir. 2023) (quoting United States v. Caballero-Vázquez, 896 F.3d 115, 120 (1st Cir. 2018)). "[A] sentence is not substantively

---

[3] First Circuit "precedent is less-than-clear as to whether a sentencing court's weighing of mitigating factors implicates procedural or substantive reasonableness." United States v. Caballero-Vázquez, 896 F.3d 115, 120 n.1 (1st Cir. 2018). There is some reason to conclude that this issue is a matter of substantive reasonableness. Id. (citing Gall v. United States, 552 U.S. 38, 57-59 (2007)). Because we apply an abuse of discretion standard to both types of arguments in this case, however, we conclude that "it is immaterial whether [Mr. Maldonado's arguments] are characterized as procedural or substantive arguments." United States v. Contreras-Delgado, 913 F.3d 232, 242 n.3 (1st Cir. 2019).

unreasonable simply because the court chose not to attach to certain of the mitigating factors the significance that the defendant thinks they deserve." Id. (quoting United States v. Serrano-Delgado, 29 F.4th 16, 30 (1st Cir. 2022)). And "[m]erely raising potentially mitigating factors does not guarantee a lesser sentence." Id. (alteration in original) (quoting Serrano-Delgado, 29 F.4th at 49).

The district court "conduct[ed] an 'individualized assessment' of the § 3553(a) factors" by considering not only the aggravating factors detailed above, but also Mr. Maldonado's "mitigating characteristics." Colón-Cordero, 91 F.4th at 51. It considered Mr. Maldonado's personal background, including his educational and work history, receipt of Social Security disability income, use of marijuana and medications, and mental health conditions, including his bipolar disorder. The court also considered the "positive changes" made by Mr. Maldonado since his arrest, specifically noting that "after having been treated at a BOP facility," he appeared to have "improved his mental situation." Upon "engag[ing] with both [the] mitigating and aggravating factors," the court reasonably determined that an upward variance was warranted. United States v. González-Rodríguez, 859 F.3d 134, 140 (1st Cir. 2017); see United States v. Santiago-Rivera, 744 F.3d 229, 233 (1st Cir. 2014) (explaining that "sentencing court sufficiently reviewed the section 3553(a) factors" when it

"weighed the aggravating factors more heavily than the mitigating factors, and then explained why a substantial upward variance was indicated").

Mr. Maldonado argues that the court failed to consider other mitigating factors, like that he possessed the firearms for "self-protection because some individuals were looking for him in order to kill him." But "[o]n this record," given the court's thorough explanation of the factors affecting its sentence, the "more appropriate inference" from the court's "lack of express mention of this [alleged] fact" is that it simply found it to be "unpersuasive." Polaco-Hance, 103 F.4th at 106 (quoting United States v. Santa-Soler, 985 F.3d 93, 99 (1st Cir. 2021)). Whether Mr. Maldonado "disagrees with how" the court ultimately "weighed the mitigating and aggravating factors here" is irrelevant.[4] Id. The district court did not abuse its discretion just because it "chose not to attach to certain of the mitigating factors the significance" that Mr. Maldonado "th[ought] they deserved." Id. (quoting González-Rodríguez, 859 F.3d at 140).

---

[4] Mr. Maldonado also asserts that "no weight should be given in sentencing to arrests not buttressed by convictions or independent proof of conduct." But the court did not rely on any such arrests not resulting in convictions when imposing its sentence.

- 18 -

### C.   Breach of Plea Agreement

Finally, we note that Mr. Maldonado also argues that the government has breached the plea agreement by defending the upwardly variant sentence on appeal.  "Because [Mr. Maldonado] raised this claim 'at the earliest point when it was logical to do so,' he sufficiently preserved it for our [de novo] review." Flores-Nater, 144 F.4th at 65 (quoting United States v. Jurado-Nazario, 979 F.3d 60, 62-63 (1st Cir. 2020)).  "Plea agreements are like contracts," see Fargas-Reyes, 125 F.4th at 270, and must be interpreted according to traditional contract principles, Flores-Nater, 144 F.4th at 65.   Here, the plea agreement simply states that "the parties agree to request a sentence of imprisonment within the applicable [g]uidelines range" and that "any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach."  (Emphasis added).  "A natural reading of these provisions suggests that they apply only to the parties' recommendations at sentencing below," not the instant appeal.  Flores-Nater, 144 F.4th at 65.  Moreover, while the plea agreement expressly limits Mr. Maldonado's right to appeal "if the sentence imposed by the [c]ourt is within or below the [g]uidelines range," nowhere does it "limit the government's right to defend a higher sentence on appeal," Flores-Nater, 144 F.4th at 65.  "The lack of express limitation on the government, combined with a

disclaimer and the presence of an express restriction on [Mr. Maldonado], strengthen the inference that we should not read the agreement to bar the government from defending the district court's higher sentence on appeal."  Id. at 65-66.

## III.

For all these reasons, the sentence imposed by the district court is AFFIRMED.