# United States Court of Appeals
## For the First Circuit

No. 21-1942

UNITED STATES OF AMERICA,

Appellee,

v.

JEAN CARLOS POLACO-HANCE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Montecalvo and Rikelman, Circuit Judges.

Mauricio Hernandez Arroyo, with whom Law Offices of Mauricio Hernandez Arroyo was on brief, for appellant.

Jonathan L. Gottfried, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Gregory B. Conner, Assistant United States Attorney, were on brief, for appellee.

June 3, 2024

**RIKELMAN**, <u>Circuit Judge</u>.   Jean Carlos Polaco-Hance ("Polaco") received a seventy-two-month sentence after he was convicted of being a felon in possession of a firearm and unlawfully possessing a machinegun.  Pointing out that his sentence is forty percent higher than the upper end of the range recommended under the federal sentencing guidelines, Polaco challenges the procedural and substantive reasonableness of his sentence.  After careful consideration, we conclude that the district court provided sufficient reasons to justify its higher sentence here, including the large amount of ammunition in Polaco's possession, and therefore affirm.

## I. BACKGROUND

### A. Relevant Facts[1]

In 2019, Polaco pled guilty to attempting to smuggle about $100,000 in cash in bulk from the United States to the Dominican Republic and making a false statement to a United States agency.  He was sentenced to fifteen months of imprisonment for each offense, to be served concurrently, and three years of supervised release.  He began his supervised release term on May 29, 2020.

---

[1] "In considering [Polaco's] challenge to his sentence, we take the facts from the trial record, the undisputed portions of the presentence investigation report, and the transcript of the sentencing hearing." <u>United States</u> v. <u>Brown</u>, 26 F.4th 48, 53 n.1 (1st Cir. 2022).

About three months later, Polaco was arrested for the offenses that form the basis of this appeal. The events that led to his arrest and conviction transpired on September 10, 2020, when four police officers were driving in an unmarked police car through a retail area in Carolina, Puerto Rico. As they drove past an auto-repair shop where Polaco worked, one of the officers observed Polaco standing in front of the shop with a bag over his shoulder. The officer witnessed Polaco reach into the bag and turn his body as he watched the path of the unmarked car. Suspecting that Polaco had a firearm in his bag, the officer informed his colleagues that an individual standing in front of the auto-repair shop was armed. The driver turned the car around and parked in between the shop and a bakery located next door; as they exited the vehicle, the four officers called out to Polaco that they were police. In response, Polaco began to flee toward a fence at the back of the shop and threw his bag over the fence. The officers quickly caught up, arrested Polaco, and recovered the bag. Inside it, they found a Glock pistol modified to fire automatically[2] and loaded with a magazine capable of holding twelve rounds of ammunition; four extended magazines capable of holding twenty-two rounds of ammunition each; and a total of 111 rounds of

---

[2] "[A] fully automatic weapon [is one] that fires continuously with a single pull on the trigger." United States v. O'Brien, 542 F.3d 921, 922 n.1 (1st Cir. 2008), aff'd, 560 U.S. 218 (2010).

ammunition.  Most of the 111 rounds were distributed between the magazines, though sixteen rounds were loose in the bag.

A federal grand jury indicted Polaco on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of unlawfully possessing a machinegun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). The case proceeded to trial, after which a jury found Polaco guilty on both counts.

### B. Sentencing Proceedings

Prior to the sentencing hearing, a probation officer prepared a presentence report ("PSR") setting forth the guideline calculations that applied in Polaco's case.  The sentencing guideline that covers Polaco's offenses is section 2K2.1.  It calls for a base offense level of twenty if (1) the "offense involved" a "firearm that is described in 26 U.S.C. § 5845(a)," (2) the defendant was a "prohibited person" at the time of the offense (for instance, someone previously convicted of a felony), and (3) there is no other basis for a greater enhancement under the guideline.  U.S. Sent'g Guidelines Manual § 2K2.1(a)(4)(B)(i)(II), (ii)(I) (U.S. Sent'g Comm'n 2023) [hereinafter U.S.S.G.].  Section 5845(a), in turn, includes a machinegun among the "firearm[s]" it lists.  26 U.S.C. § 5845(a)(6).  And a machinegun is defined as "any weapon which shoots, is designed to shoot, or can be readily

restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." Id. § 5845(b).

Relying on section 2K2.1, the probation officer calculated Polaco's base offense level as twenty,[3] see U.S.S.G. § 2K2.1(a)(4)(B)(i)(II), (ii)(I), and then subtracted two levels for acceptance of responsibility. Polaco's two prior federal convictions and the fact that he committed the firearms offenses while on supervised release resulted in a criminal history category of III. Together, these tabulations yielded a guideline sentencing range of thirty-three to forty-one months of imprisonment. The PSR noted that, in determining whether a sentence outside of that range was appropriate, the court could consider, among other things, "that [Polaco's] possession of five (5) magazines, four (4) of which were extended, carrying a total of 111 rounds of ammunition to be used on a pistol that was converted to fire automatically[,] increases the likelihood of harm to society should the defendant in fact discharge the weapon." Neither party filed objections to the PSR.

The government did, however, file a sentencing memorandum challenging the guideline calculation and contending that a sentence above the guideline range was warranted. The

---

[3] Polaco's two offenses (being a felon in possession of a firearm and unlawfully possessing a machinegun) were grouped together for the purpose of calculating his guideline sentencing range.

two-level deduction for acceptance of responsibility was incorrect, the government maintained. Because Polaco went to trial to contest factual elements of guilt, rather than to preserve separate, legal challenges, it argued, his case was not one of the "rare situations" refenced in the guidelines in which a defendant can demonstrate acceptance of responsibility while simultaneously exercising their right to trial. See U.S.S.G. § 3E1.1 cmt. n.2. The government's guideline calculation, with the two-level deduction removed from the total offense level, was forty-one to fifty-one months.

The government then requested a sentence of sixty months, nine months above that range, for four key reasons. First, it pointed to the 111 rounds of ammunition and four high-capacity magazines that Polaco possessed. Second, it contended that guns that are modified into machineguns pose a heightened danger compared to machineguns that are manufactured as such. In support of that proposition, it cited two publications issued by the United States Army that discuss safety protocols and design features of manufactured machineguns that soldiers use to stabilize the recoil and muzzle rise from their weapons. The government asserted that those features were absent in the simple pistol that Polaco possessed and, as such, the pistol was particularly hard to control and particularly dangerous. Third, the government contended that an upward variance was justified because of the "social context of

-6-

the offense[s]" -- that is, high rates of gun-related homicide in Puerto Rico relative to the rest of the United States -- when "combined with [the] specific facts" here. Those facts included Polaco's possession of 111 rounds of ammunition and multiple high-capacity magazines during the daytime in a retail area of Puerto Rico. Fourth, citing the need for adequate deterrence, the government insisted that a higher-than-average sentence was necessary because the within-guideline sentence Polaco received in his prior case did not deter him from engaging in new criminal conduct just three months into his supervised release term.

The district court held the sentencing hearing in November 2021. At the hearing's outset, Polaco challenged the government's arguments in support of an upward variance. As relevant to the issues before us, he contended that the government's discussion of murder rates in Puerto Rico was unrelated to his case. He stressed that he never removed the firearm from the bag he was carrying; rather, his offenses were victimless and nonviolent. Additionally, Polaco disputed the government's assertion that the machinegun he possessed was especially dangerous. He maintained that it was misleading to rely on the Army publications that discussed design features to improve stability and avoid recoil for a machinegun, when the weapon that he possessed was a handgun. Polaco concluded by requesting a sentence within the guideline range calculated by the

PSR. The government repeated the arguments from its sentencing memorandum explaining its calculation of the guideline range and why a nine-month variance above that range was justified.

The district court then proceeded with sentencing. It instructed the probation officer to amend the PSR so that the guideline calculation did not include a two-level reduction for acceptance of responsibility.[4] That adjustment -- the only one the district court made to the PSR's calculation -- yielded a corrected guideline sentencing range of forty-one to fifty-one months. Next, the court cited its review of the 18 U.S.C. § 3553(a) sentencing factors. And it quoted the introductory commentary to Part A of Chapter Four of the guidelines, which discusses calculating a defendant's criminal history score. That commentary states that "repeated criminal behavior will aggravate the need for punishment with each recurrence." U.S.S.G. ch. 4, pt. A, introductory cmt.

Shifting gears, the court briefly discussed Polaco's age, educational background, and employment status. Turning to Polaco's offense conduct, the court noted that he had in his possession 111 rounds of ammunition and five magazines, four of which were extended and all of which were loaded. It proceeded to highlight the "highly dangerous and unusual" nature of machineguns

---

[4] Polaco does not challenge this ruling on appeal.

in general.  And then it remarked on the dangerousness of altered machineguns in particular, stating that "pistols altered [to be] machine[]guns are difficult, if not impossible, to control."

Ultimately, the court concluded that neither party's recommended sentence reflected the seriousness of the offenses, addressed the need for deterrence and punishment, protected the public, or promoted respect for the law.  It instead imposed a sentence of seventy-two months.  This timely appeal followed.

## II. STANDARD OF REVIEW

We review claims of sentencing error by using a two-step process.  United States v. Colón-Cordero, 91 F.4th 41, 48 (1st Cir. 2024).  Under this approach, "we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable."  United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011).

At both steps, we review preserved objections for abuse of discretion.  United States v. De Jesús-Torres, 64 F.4th 33, 39 (1st Cir. 2023).  Under the abuse-of-discretion umbrella, we review the sentencing court's factual findings for clear error and its legal conclusions de novo.  United States v. Carrasquillo-Vilches, 33 F.4th 36, 41 (1st Cir. 2022).

### III. DISCUSSION

Polaco challenges both the procedural and substantive reasonableness of his seventy-two-month sentence. We address each claim in turn.

#### A. Procedural Reasonableness

Polaco argues the district court procedurally erred by relying on a factor already accounted for in his guideline range to justify its upward variance -- the nature and dangerousness of machineguns -- without indicating why that factor deserved extra weight here. He further contends that the court compounded this procedural error by considering the violent-crime rates in Puerto Rico without connecting those rates to his individual case, which involved no violence.

At the outset, we note that the parties debate whether Polaco preserved his procedural claim by sufficiently raising these issues before the district court. We need not resolve this dispute, however, because we conclude that Polaco cannot prevail even if we grant him the benefit of abuse-of-discretion review. See United States v. Rijos-Rivera, 53 F.4th 704, 708 (1st Cir. 2022).

Under our precedent, the dangerous nature of a machinegun cannot alone provide an adequate basis for an upward variance for offenses covered by section 2K2.1. See United States v. García-Pérez, 9 F.4th 48, 53-54 (1st Cir. 2021); United States

v. Carrasquillo-Sánchez, 9 F.4th 56, 59-60 (1st Cir. 2021); United States v. Rivera-Berríos, 968 F.3d 130, 134-35 (1st Cir. 2020). But here, the district court considered Polaco's machinegun possession only alongside other, case-specific factors, namely, the large cache of ammunition and the high-capacity magazines Polaco had when he was arrested, as well as what the district court viewed as a heightened need for deterrence.

We begin with the large cache of ammunition and the high-capacity magazines. At the sentencing hearing, the court twice noted that Polaco had in his possession 111 rounds of ammunition and highlighted that he possessed five magazines, four of which were extended and all of which were loaded. It also stated that the purpose of extended magazines that hold greater amounts of ammunition is increased lethality. It is true that, at the hearing, the district court mentioned the ammunition and high-capacity magazines in its recitation of the facts, rather than as part of its explicit justification for the sentence. But the court's written statement of reasons says that, in imposing its sentence, it "considered that the U.S. Sentencing Guidelines d[o] not account for the amount of ammunition and/or magazines involved in the offense[s]." Further, one of the government's principal arguments made both in its sentencing memorandum and at the sentencing hearing was that the court should vary upward because of the amount of ammunition and four high-capacity

-11-

magazines Polaco possessed. From all this information -- the government's arguments in support of a variance, the district court's repeated references at the hearing to the magazines and ammunition, and the written statement of reasons -- it is apparent that the court predicated Polaco's sentence on the amount of ammunition and number of high-capacity magazines found in his possession when he was arrested. See United States v. Montero-Montero, 817 F.3d 35, 38 (1st Cir. 2016) (explaining that we may glean a court's explanation for the chosen sentence "by fair inference from the sentencing record"). We have held repeatedly that the amount of ammunition and the number of extended magazines, at least in a range consistent with the amount and number present in this case, can be valid bases for an upward variance for firearms offenses. See, e.g., United States v. Rivera-Santiago, 919 F.3d 82, 85-86 (1st Cir. 2019).

The district court also implicitly grounded its variance in deterrence and recidivism-based concerns. It began its § 3553(a) analysis by quoting the following introductory comment to the guidelines chapter on criminal history: "General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence." U.S.S.G. ch. 4, pt. A, introductory cmt. This language mirrors the government's argument that a higher-than-average sentence was necessary to prevent

-12-

future crimes in part because Polaco received a sentence within the guideline range in his prior case and then engaged in new criminal conduct -- this time, firearms offenses -- only three months after his release from imprisonment.  By comparing the government's assertion with the district court's discussion, we can fairly infer that the court was adopting the government's view that a variance was needed because a previous within-guideline sentence did not deter Polaco from engaging in illegal conduct shortly after his release.  "Although the district court could have made its rationale more explicit," there is enough information in the record for us to evaluate the district court's reasoning from what it said and did. United States v. Vázquez-Martínez, 812 F.3d 18, 24 (1st Cir. 2016) (reasonably inferring from the district court's discussion of deterrence and the one-and-a-half years between the defendant's commencement of supervised release and new criminal conduct the court's "concern that a Guidelines-range sentence did not adequately take into account [the defendant's] potential for recidivism").  Again, our case law indicates that a district court does not abuse its discretion by imposing an upward variance for repeated criminal activity that occurs shortly into an individual's supervised release term.  See id.; cf. United States v. Vázquez-Vázquez, 852 F.3d 62, 66 (1st Cir. 2017).

Against this backdrop, the district court gave permissible weight to a factor already accounted for in the

guidelines insofar as it relied on the inherent dangerousness of machineguns. Importantly, in varying upward, the court did not give dispositive weight to that factor alone but rather considered it along with the other valid and individualized factors we've just outlined. Cf. United States v. Flores-Machicote, 706 F.3d 16, 24 (1st Cir. 2013) (finding that sentencing court made an individualized assessment of defendant's case when it "addressed the nature and circumstances of the particular offense [and] its seriousness" and "paid particular heed both to the fact that the defendant's weapon was 'a nine millimeter, semi-automatic pistol with a high capacity magazine,' and to the defendant's likely recidivism").

For similar reasons, the district court did not abuse its discretion to the extent it considered "community factors," by which Polaco means the alleged prevalence of machineguns and gun violence in Puerto Rico. Polaco asserts that the government's references to homicide rates "clearly advised and moved the district court to allude to Puerto Rico's gun problems, murder rate and armed violent crimes to support a sentence 21 months above the guideline sentencing range." And yet, he states, those factors were "completely unrelated to [him] or his case," which involved no allegations of past or present violence.

We have deemed "well-settled" the principle that the district court "may take into account the characteristics of the

community in which the crime took place when weighing the offense's seriousness and the need for deterrence." United States v. Zapata-Vázquez, 778 F.3d 21, 23 (1st Cir. 2015). That is because "the incidence of particular crimes in the relevant community appropriately informs and contextualizes the . . . need for deterrence." Flores-Machicote, 706 F.3d at 23. At the same time, the court still must assess the § 3553(a) factors "in case-specific terms." Id.; see also United States v. Rivera-González, 776 F.3d 45, 50-51 (1st Cir. 2015) (finding "the high incidence of violent crime in Puerto Rico" to be an appropriate consideration at sentencing but explaining that "a sentencing court's appraisal of community-based considerations does not relieve its obligation to ground its sentencing determination in individual factors related to the offender and the offense"). Indeed, a district court's "emphasis on factors that are not specifically tied to either the offender or the offense of conviction . . . may . . . go too far." Flores-Machicote, 706 F.3d at 24. It is "possible for a sentencing judge to focus too much on the community and too little on the individual and, thus, impose a sentence that cannot withstand the test of procedural reasonableness." Id.; see also Rivera-Berríos, 968 F.3d at 136-37 (citing Flores-Machicote, 706 F.3d at 21, 23).

To the extent the district court emphasized community characteristics here, it did not do so "at the expense of also weighing the specific circumstances of [Polaco's] case."

Zapata-Vázquez, 778 F.3d at 24. The government argued both in its sentencing memorandum and at the sentencing hearing that, although "social background cannot be viewed in a void," the district court could consider rates of armed violent crime in Puerto Rico when "combined with specific facts of [Polaco's] offense[s]." It then pointed to Polaco's "carrying a machinegun with over 100 rounds of ammunition and multiple high-capacity magazines in broad daylight in a retail area of Puerto Rico" as reasons for an upward variance. In turn, at the sentencing hearing, the court referenced the ammunition, loaded high-capacity magazines, and its concern that those magazines contribute to the firearm's lethalness. From these comments and the government's arguments, we can deduce that the court based its variance in part on those factors, that is, the particulars of Polaco's case. See Montero-Montero, 817 F.3d at 37-38 (explaining that we can discern the rationale for a sentence from the parties' oral and written arguments and the sentencing colloquy).

Because the district court did not predicate its variance merely on the inherent dangerousness of machineguns or on community considerations to the exclusion of the circumstances of Polaco's offenses, the sentence is not procedurally unreasonable.

## B. Substantive Reasonableness

We now turn to Polaco's substantive reasonableness claim. Echoing his procedural claim, Polaco argues that the upward

variance here is substantively unreasonable because his conduct falls squarely within the heartland of machinegun possession cases covered by the guidelines, and there is "nothing [in] the record that suggests that his sentence could not be sheltered within the guideline[] [range]."

Before turning to the merits of this claim, we address a threshold issue regarding the standard of review. At his hearing, Polaco advocated for a sentence within the guideline sentencing range calculated by the PSR. "[W]e have consistently held that by arguing for a shorter sentence before the district court, a defendant preserves a challenge to the substantive reasonableness of his sentence on appeal." United States v. Melendez-Hiraldo, 82 F.4th 48, 56 (1st Cir. 2023); see also United States v. Rand, 93 F.4th 571, 579 (1st Cir. 2024); United States v. Rodriguez-Monserrate, 22 F.4th 35, 40-41 (1st Cir. 2021).

The government agrees, but only to a point. It concurs that Polaco preserved a general claim that his sentence was too long, but it contends that simply asking for a shorter sentence is insufficient to preserve his specific substantive reasonableness argument on appeal -- that there was no plausible rationale for an upward variance when the record shows his case is no different than the run-of-the-mill machinegun possession offense.

We need not decide if Polaco's specific substantive reasonableness argument is preserved by his request for a sentence

-17-

shorter than the one the district court pronounced.  Even if we assume it was preserved and therefore abuse-of-discretion review applies, we conclude that Polaco cannot succeed on his claim.  See United States v. Vargas-Martinez, 15 F.4th 91, 102 n.7 (1st Cir. 2021) (assuming favorably for defendant that advocating for a shorter sentence preserved his substantive reasonableness claim that the district court relied exclusively on the elements of the offense to justify an upward variance).

As always, we begin by setting out the governing legal principles.  In conducting our substantive-reasonableness inquiry, we keep in mind that "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes."  United States v. Santiago-Lozada, 75 F.4th 285, 294 (1st Cir. 2023) (alteration in original) (quoting United States v. Ortiz-Pérez, 30 F.4th 107, 113 (1st Cir. 2023)).  As such, our task is "to determine whether the sentence falls within this broad universe."  United States v. Rivera-Morales, 961 F.3d 1, 21 (1st Cir. 2020).  To make that determination, "we look for the hallmarks of a substantively reasonable sentence: 'a plausible sentencing rationale and a defensible result.'"  United States v. Díaz-Lugo, 963 F.3d 145, 157 (1st Cir. 2020) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

When, as here, the district court imposes a sentence above the guideline sentencing range, it "must justify a variance

of the magnitude in question," Martin, 520 F.3d at 91, and "the rationale underlying the upward variance should 'be rooted either in the nature and circumstances of the offense or the characteristics of the offender,'" United States v. Flores-Nater, 62 F.4th 652, 656-57 (1st Cir. 2023) (quoting Martin, 520 F.3d at 91). Further, when the court relies on a factor that is already accounted for in the guideline range to vary upward, it "must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the guidelines calculation." United States v. Guzman-Fernandez, 824 F.3d 173, 177 (1st Cir. 2016) (quoting United States v. Zapete-García, 447 F.3d 57, 60 (1st Cir. 2006)).

We look to various aspects of the record in evaluating the district court's rationale. We consider its "contemporaneous oral explanation of the sentence, its near-contemporaneous written statement of reasons, and what fairly can be gleaned by comparing what was argued by the parties or proffered in the [PSR] with what the sentencing court ultimately did." Martin, 520 F.3d at 93.

With this context in mind, we turn to Polaco's claim. To recap: Polaco's guideline sentencing range was forty-one to fifty-one months, and the district court imposed a seventy-two-month sentence. The chosen sentence was therefore twenty-one months above the top-end of the guideline range, which equals about a forty percent variance. We conclude that the

district court provided a plausible rationale for a variance of this magnitude.

As we've explained, we can infer that the district court based its variance in part on the 111 rounds of ammunition and on the four extended and loaded magazines found with the gun. Under our precedent, a sentencing court may consider both the amount of ammunition and the number of high-capacity magazines as aggravating factors not already accounted for by the guidelines if they exceed what is consistent with simple possession.[5] See, e.g., United States v. Bruno-Campos, 978 F.3d 801, 806 (1st Cir. 2020) (explaining that defendant's possession of a "substantial amount of ammunition [eighty-nine rounds] packed into four separate magazines, two of which were high-capacity" was not factored into section 2K2.1). Accordingly, we have affirmed similar upward variances when the district court relied on an amount of ammunition or number of high-capacity magazines comparable to that present here as part of its justification for the variance. See, e.g., United States v. Morales-Negrón, 974 F.3d 63, 67 (1st Cir. 2020) (upholding twenty-four-month variance for felon-in-possession and

---

[5] As a reminder, the guideline provision that covers Polaco's offenses of conviction, section 2K2.1, applies to an individual who possessed "a firearm," which, in turn, includes "a machinegun," defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." U.S.S.G. § 2K2.1(a)(4)(B)(i)(II), (ii)(I); 26 U.S.C. § 5845(a), (b).

machinegun-possession offenses after finding that "the substantial amount of ammunition [fifty-seven rounds] and multiple-high-capacity magazines [four] involved in the offense" constituted one of "several plausible rationales for the upward variance"); Díaz-Lugo, 963 F.3d at 155 (affirming twenty-three-month variance based in part on court's expressed concern over the fact that the defendant was arrested with two machineguns and four high-capacity magazines, facts that "remove[d] th[e] case from the heartland of the applicable guideline provisions" for machinegun possession); United States v. Contreras-Delgado, 913 F.3d 232, 243 (1st Cir. 2019) (determining that district court provided an individualized rationale for its sixteen-month variance in part because it considered that "the machine gun possession offense . . . involved a substantial amount of ammunition [seventy-seven rounds] and multiple high-capacity magazines [three], heightening the risk posed to the public").

Further, the government's arguments considered alongside the court's invocation of the Chapter Four guidelines commentary indicate the court adopted the government's theory that a heightened need for deterrence existed in this case, given that Polaco committed new, firearms offenses just three months into his term of supervised release. This theory goes beyond the mere fact that Polaco had a prior criminal history, which already was calculated and factored into his guideline sentencing range. Thus,

-21-

for all these reasons, the court did not, as Polaco contends, rest its rationale solely on factors already accounted for in the guidelines.  See United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014) (finding no abuse of discretion when the upward variance was "anchored in a plausible, albeit not inevitable, view of the circumstances sufficient to distinguish this case from the mine-run of cases covered" by the guidelines).

The court also based Polaco's sentence on facts "to which it alluded in open court immediately before imposing the sentence, and which were relevant to the nature and circumstances of the offense and to [Polaco's] characteristics."  Vargas-Martinez, 15 F.4th at 103.  In addition to considering the ammunition, loaded magazines, and perceived need for deterrence to address repeated criminal behavior at the outset of a supervised release term, the district court appropriately emphasized the dangerousness of the firearm and community factors, for the reasons we explained above.  Taken collectively, these factors "add up to a plausible rationale."  Martin, 520 F.3d at 91.

Finally, based on our precedent, the sentence imposed here is a defensible result, given those factors the court cited.  See Morales-Negrón, 974 F.3d at 67.  Polaco argues, however, that a twenty-one-month variance is unwarranted in light of his mitigating factors, which include being a provider for his family and his full-time employment at the time of the offenses.  To the

extent he contends that the district court did not consider his mitigating factors, the district court noted that Polaco was employed at the auto-repair shop before he was arrested. See García-Pérez, 9 F.4th at 52 (finding that sentencing court demonstrated that it considered a mitigating factor by mentioning it). It is true that the district court did not expressly refer to Polaco's status as a breadwinner for his family. And we have held that a court fails to offer a case-specific rationale for its sentence when it entirely ignores the "dominant mitigation argument" that a defendant relies on in advocating for a particular sentence. See Colón-Cordero, 91 F.4th at 55 (finding that sentencing court failed to make an individualized assessment of defendant when "the mitigating individual characteristic," the defendant's intellectual disability, "and the argument about it were completely ignored"). By contrast, here Polaco "trains his gaze on a sentencing court's failure to address one of his [mitigation] arguments," but "our caselaw is clear that, in fact, [a court] need not 'address every argument that a defendant advances in support of his preferred sentence.'" Id. (quoting Rivera-Morales, 961 F.3d at 19). The fact that Polaco provided for his family was discussed in the PSR and mentioned by his counsel at the sentencing hearing. "On this record, the more appropriate inference" from the lack of express mention of this fact "is that, in the court's view, the mitigating factor[] that

-23-

[Polaco] highlighted [was] unpersuasive," not ignored. United States v. Santa-Soler, 985 F.3d 93, 99 (1st Cir. 2021); see also United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012). Although Polaco also disagrees with how the district court weighed the mitigating and aggravating factors here, that is not enough to show an abuse of discretion. See United States v. Serrano-Delgado, 29 F.4th 16, 30 (1st Cir. 2022) (explaining that "a sentence is not substantively unreasonable simply because the court chose not to attach to certain of the mitigating factors the significance that the defendant thinks they deserved" (cleaned up) (quoting United States v. González-Rodríguez, 859 F.3d 134, 140 (1st Cir. 2017))).

Finding a plausible rationale and defensible result on this record, we conclude that Polaco's sentence was substantively reasonable.

## IV. CONCLUSION

For all these reasons, we **affirm**.