# United States Court of Appeals
## For the First Circuit

No. 22-1669

UNITED STATES,

Appellee,

v.

EDGAR JOEL MORALES-ORTIZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Rikelman, Lynch, and Howard,
Circuit Judges.

Julie K. Connolly, with whom Julie Connolly Law, PLLC was on brief, for appellant.

Julia M. Meconiates, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

August 19, 2025

**RIKELMAN**, <u>**Circuit Judge**</u>.  Edgar Joel Morales-Ortiz pleaded guilty to two counts of carjacking and one count of possession of a firearm in furtherance of a crime of violence. Consistent with his plea agreement, Morales and the government requested a prison term for each count within the range recommended by the U.S. Sentencing Guidelines.  Citing the seriousness of the offenses and Morales's other conduct, the district court imposed higher sentences than the parties had requested on all three counts, including an upwardly variant sentence on the firearm count.

Morales now appeals his conviction and sentence.  He contends that he should be able to withdraw his guilty plea because he was misinformed as to both the total offense level for the carjacking counts and the supervised release term for the firearm count, all in violation of Federal Rule of Criminal Procedure 11. He also argues that his sentence for the firearm count is procedurally unreasonable.  We conclude that the law and the record do not support Morales's arguments and, thus, affirm.

## I. BACKGROUND

### A. Relevant Facts[1]

The events at the heart of this appeal took place in

---

[1] "Because [Morales] pleaded guilty, we draw these facts from the change-of-plea colloquy, the transcript of the sentencing hearing, and the undisputed portions of the revised presentence

August 2021.  On the night of August 18, Morales drove to a gas station in Caguas, Puerto Rico, with Tommy Joel Morales-Ortiz (his brother)[2] and José Montañez.  At the station, they targeted a man who was filling his gas tank and carjacked his vehicle, a Ford Ranger pickup truck.  Morales later said that they were looking for an easy steal and that a person pumping gas into their car is distracted and an excellent target for a robbery.  During the carjacking, Tommy was in possession of a black pistol, which at one point was "pointed at [the] . . . victim."  After successfully intimidating the car's owner, Tommy and Montañez drove away in the Ranger.  Morales later joined them, after abandoning the car that he drove to the gas station.  When Morales climbed into the Ranger, Tommy handed him the black pistol.

Having successfully carjacked the Ranger, Morales, Tommy, and Montañez set their sights on another carjacking.  This time they targeted a Ford Eco Sport proceeding down a road and rear-ended it several times.  The woman driving the Eco Sport pulled over to the left side of the motorway, assuming that the driver of the Ranger wanted to pass her.  At that point, Morales (who was driving) pulled up next to her and used the Ranger's driver side door to pin shut the passenger door of the Eco Sport.

_____

investigation report."  United States v. Aponte-Colón, 104 F.4th 402, 404 n.1 (1st Cir. 2024).

[2] We refer to Tommy by his first name to avoid confusion.

- 3 -

Tommy or Montañez then exited the Ranger and attempted to open one of the rear doors of the Eco Sport. Maneuvering quickly, the driver of the Eco Sport was able to unpin her vehicle and flee the blockade. She drove to a police station and reported the details of the attempted carjacking, including that she saw a firearm.

That same night, Morales and an unidentified companion robbed a bar, El Nuevo Amanecer. After Morales shot a firearm in the air outside the bar and announced a robbery, four people who were standing nearby at the time threw themselves on the ground. Morales proceeded to steal cash from each of them. He then entered El Nuevo Amanecer, fired a shot inside the bar, and, again, proclaimed a robbery. The person accompanying Morales stripped the people in the bar of their belongings, and the pair absconded in the carjacked Ranger. Police soon came after them, and a chase ensued, but Morales and his companion ultimately evaded the police. Morales later told officers that he had heard a siren and saw police lights, indicating that they should stop, but the pair kept driving.

The next day, federal officers arrested Morales. During a physical lineup, the victim of the attempted carjacking of the Eco Sport identified Morales and Tommy as two of the perpetrators. Morales ultimately confessed to the attempted carjacking and admitted that, prior to the robbery at El Nuevo Amanecer, he had rear-ended multiple vehicles with the intent to rob the drivers.

- 4 -

He also told officers that he had burned the clothes he wore on the night of August 18 and threw the firearm he had used into Lake Carite.

## B. Procedural History

A grand jury charged Morales with two counts of carjacking (including the attempted carjacking of the Eco Sport), in violation of 18 U.S.C. § 2119(1), and two counts of possession and brandishing of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). After initially pleading not guilty, Morales eventually entered into a plea agreement with the government. Under that agreement, he pleaded guilty to both counts of carjacking and one count of the lesser-included crime of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i), in connection with the carjacking of the Ranger.

For the firearm count, the parties agreed to request a guidelines sentence of 60 months in prison to run consecutively to the carjacking sentence. As for the carjacking counts, the parties agreed to request a sentence "at the low end of the applicable [Sentencing] Guidelines range" for a total offense level ("TOL") of 21 combined with "the criminal history category [("CHC")] determined by the Court." The plea agreement included advisory guidelines calculations and provided a sentencing range for each

- 5 -

possible CHC, but it also noted that "the Court [was] not required to accept those recommended [Sentencing] Guidelines calculations."

The plea agreement set out the maximum statutory penalty for each offense. However, it contained the incorrect maximum supervised release term for the firearm offense, listing that term as "not more than three years." In fact, the maximum supervised release term for a violation of 18 U.S.C. § 924(c)(1)(A)(i) is not more than <u>five</u> years.[3]

At the change of plea hearing, the magistrate judge advised Morales that the terms of the plea agreement were merely recommendations and that the sentencing judge had the authority and discretion to "impose any sentence within the statutory maximum for the offense [Morales was] pleading guilty to." Morales confirmed that he understood those concepts. The magistrate judge then asked the prosecutor to explain the maximum penalties applicable to each count. Reading from the plea agreement, the prosecutor advised Morales of the incorrect supervised release term for the firearm offense, again stating that the penalty was a supervised release term of no more than <u>three</u> years.

---

[3] Because the maximum penalty for a violation of 18 U.S.C. § 924(c) is life imprisonment, it is a Class A felony. <u>See</u> <u>United States</u> v. <u>Ortiz-García</u>, 665 F.3d 279, 285 (1st Cir. 2011); 18 U.S.C. § 3559(a)(1). Unless otherwise specified, the authorized supervised release term for a Class A felony is "not more than five years." 18 U.S.C. § 3583(b)(1).

Following the change of plea hearing, the probation officer submitted an initial presentence report and, a few weeks later, an amended presentence report ("the PSR"). The PSR listed the correct maximum penalties for each offense, including the correct supervised release terms. The PSR also included the probation officer's advisory guidelines calculations, which differed from the calculations in the plea agreement. According to the probation officer, the TOL for the carjacking offenses was 25, not 21.[4] Based on a TOL of 25 and a CHC of II, the PSR set out a sentencing range of 63 to 78 months in prison for the carjacking counts. By contrast, the plea agreement indicated the sentencing range for the same CHC to be 41 to 51 months in prison based on a TOL of 21. Neither party objected to the PSR.

During the sentencing hearing, Morales's counsel acknowledged the discrepancy between the guidelines calculations in the plea agreement and in the PSR for the carjacking counts, noting that "the probation officer is correct in the manner in which he calculated the [Sentencing] [G]uidelines." Morales's counsel also confirmed that he had discussed the PSR with Morales and that Morales was not lodging any objections to it. The

_____

[4] The probation officer included an enhancement for brandishing or possessing a firearm in connection with the second carjacking offense (the attempted carjacking of the Eco Sport), which the parties had not included in the calculation in the plea agreement.

- 7 -

district court then turned to Morales and confirmed with him directly that he was warned that the sentencing calculations in the plea agreement were preliminary and not binding upon the court; that he had discussed the PSR with his counsel; and that his counsel had explained that the guidelines calculations in the PSR differed from the calculations in the plea agreement. After the district court concluded its questioning of Morales, both Morales and the government advocated for a total sentence consistent with the plea agreement, notwithstanding their mistake in calculating Morales's TOL for the carjacking counts.

The district court independently calculated the TOL for the carjacking counts and, like the probation officer, determined it to be 25. The court then weighed the sentencing factors under 18 U.S.C. § 3553(a), starting with Morales's age, education, employment, health, criminal history, and difficult upbringing. It also considered the details of the charged offenses as well as the various events that night, including the other attempted carjackings and the armed robbery of El Nuevo Amanecer. The court highlighted the seriousness of the carjacking offenses as well as Morales's general "pattern of conduct," which it found "represent[ed] not only a lack of respect for the law, but also disregard for human life." It determined that Morales "lack[ed] . . . introspection and maturity," pointing to a statement Morales gave during his allocution that "after having

been convicted as a juvenile, he was over confident that he had already been in the system and that he would not get caught by law enforcement officers."

After weighing the § 3553(a) sentencing factors, the district court sentenced Morales to concurrent terms of 78 months in prison for each carjacking count, at the upper end of the guidelines range, as well as three years of supervised release for those offenses. It then sentenced Morales to 84 months in prison for the firearm offense, followed by a supervised release term of five years. It explained that an upward variance above the guidelines sentence of 60 months for the firearm count was justified by the seriousness of the violation and Morales's other conduct. In total, the court sentenced Morales to 162 months in prison (84 months for the firearm count followed by 78 months for the carjacking counts) and five years of supervised release.

Morales timely appealed.[5]

## II. DISCUSION

Morales argues that we should vacate his conviction and sentence. He contends initially that the district court accepted

---

[5] Because the waiver of appeal provision in Morales's plea agreement was conditioned on Morales receiving a sentence "within or below the range for the total offense level calculated in [the] [p]lea [a]greement," that provision does not bar this appeal. See Ortiz-García, 665 F.3d at 283 ("A waiver of appeal is enforceable 'if it is valid and the defendant's claim lies within its scope.'" (emphasis added) (quoting United States v. Padilla-Colón, 578 F.3d 23, 28 (1st Cir. 2009))).

his guilty plea despite clear violations of Federal Rule of Criminal Procedure 11. Next, he asserts that the 84-month sentence for the firearm count was procedurally unreasonable. We analyze each of his claims in turn.

## A. Rule 11

Rule 11 governs the acceptance of a defendant's guilty plea. See Fed. R. Crim. P. 11. According to Morales, we should vacate his plea because, in his view, there were three Rule 11 violations. First, he points out that the magistrate judge informed him of the incorrect term of supervised release for the firearm count. Second, he contends that because the parties erred in calculating his TOL, he was unaware of the correct sentencing ranges for the carjacking counts when the magistrate judge accepted his guilty plea. Third, he argues that, in light of the parties' error in calculating his TOL, the district court should have confirmed whether he wanted to reconsider his guilty plea at the sentencing hearing.

Because Morales failed to object or seek to withdraw his guilty plea in the district court, we review his Rule 11 claims for plain error. See United States v. Langston, 110 F.4th 408, 419 (1st Cir. 2024). "To prevail under the plain-error standard, [Morales] must show that (1) the district court committed an error; (2) that error was 'plain -- that is to say, clear or obvious,' (3) the error affected his substantial rights, and (4) leaving the

error uncorrected would 'seriously affect[] the fairness, integrity or public reputation of judicial proceedings.'" Id. (quoting United States v. Ortíz-Mercado, 919 F.3d 686, 689 (1st Cir. 2019)).

As we explain, we conclude that Morales has identified only one Rule 11 error -- the mistake during the change of plea hearing about the duration of the supervised release term for the firearm charge -- and ultimately we reject all of his Rule 11 claims under the plain error standard.

**1. Supervised Release Term for the Firearm Count**

We begin with Morales's claim that he was not informed of the correct maximum supervised release term for the firearm charge, 18 U.S.C. § 924(c)(1)(A)(i), during the change of plea hearing. Under Rule 11, the district court "must inform the defendant of . . . any maximum possible penalty, including imprisonment, fine, and term of supervised release" before accepting the defendant's guilty plea. Fed. R. Crim. P. 11(b)(1)(H). The government concedes that Morales was misinformed as to the maximum supervised release term for the firearm charge at the change of plea hearing and that this mistake amounted to a "clear and obvious" error, satisfying the first two prongs of the plain error test.

With the first two prongs of plain error established, we turn to the third prong, which requires Morales to establish that

the error affected his substantial rights. "[A] Rule 11 error affects substantial rights . . . only when a defendant can show 'a reasonable probability that, but for the error, he would not have entered the plea.'" United States v. Rivera-Maldonado, 560 F.3d 16, 19 (1st Cir. 2009) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)). After reviewing the facts here, we conclude that Morales has not cleared this "reasonable probability" hurdle. Id.

The record demonstrates that Morales was advised of the correct supervised release term for the firearm charge before sentencing. The PSR listed the correct supervised release term for this offense not once, but twice. And, at the sentencing hearing, the district court confirmed with both Morales and his counsel that they had discussed the PSR. It also confirmed with both Morales and his counsel that Morales had no objections to the PSR. The court then reiterated the correct maximum supervised release term. Morales "did not balk at any of those points in time." United States v. Romero-Galindez, 782 F.3d 63, 68 (1st Cir. 2015).

"On top of this," the incorrect information about the supervised release term "did not 'dramatically alter[] the sentencing stakes for [Morales].'" Id. at 69 (quoting Rivera-Maldonado, 560 F.3d at 21). Indeed, we considered a similar argument in Romero-Galindez and concluded that there was no basis

for vacating the defendant's plea in that case. The defendant in Romero-Galindez was mistakenly advised at his change of plea hearing that the maximum supervised release term for his offense would be three years instead of five years, just like Morales. See id. at 68. We explained:

> Though we by no means minimize the restraining nature of supervised release, the two year difference between three and five years of supervised release is but a small fraction of the life-imprisonment penalty that [the defendant] was facing. And the transcript of the sentencing hearing makes clear that the primary concern for [the defendant] (and the court) was the length of time that he would be imprisoned . . . . There was no debate about, or worry voiced over, what term of supervised release he would face.

Id. at 69 (citation omitted). Similarly, here, Morales faced potential life imprisonment for a violation of 18 U.S.C. § 924(c)(1)(A)(i). And it was the prison term that was the focus of the sentencing hearing. Morales's counsel raised his concern to the district court that he had "sold" the guidelines calculation in the plea agreement for the carjacking counts to his client, when in fact the correct calculation, as reflected in the PSR, exposed Morales to a significantly higher prison term. By contrast, defense counsel raised no concerns about the supervised release term for the firearm count.

Morales is correct that the statutory minimum sentence at issue in Romero-Galindez was much higher, 15 years, and thus

the two-year difference in the supervised release term had less of an impact on the "sentencing stakes" for the defendant in that case.  Id. at 66, 69.  Still, Morales has failed to point to any evidence in the record that the mistake about the supervised release term for the firearm count played a role in his decision to enter a guilty plea.  Thus, on the facts here, our decision in Romero-Galindez weighs heavily against Morales.

In pressing his plain error argument on appeal despite our holding in Romero-Galindez, Morales relies on two other cases in which we found the plain error test satisfied based on Rule 11 missteps, but those cases are easily distinguishable.  Only one concerned an error about a supervised release term at all, and both involved quite different "sentencing stakes."  See Rivera-Maldonado, 560 F.3d at 21; United States v. Ortiz-García, 665 F.3d 279, 288 (1st Cir. 2011).

We start with Rivera-Maldonado.  In that case, the defendant was informed in his plea agreement and during the change of plea hearing that his maximum supervised release term was three years when it was, instead, life.  See Rivera-Maldonado, 560 F.3d at 17.  The PSR provided the accurate supervised release term, and the defendant did not object to this portion of the PSR.  See id. at 19.  Nonetheless, emphasizing the staggering disparity between a supervised release term of three years and a supervised release term of life, we stated:

> Given appellant's assertion that the information he received from the plea agreement and the magistrate judge "played a crucial role in his decision to plead guilty," and given the dramatic difference between a three year period of supervised release and a lifetime of supervised release, we are satisfied that appellant has shown a reasonable probability that he would not have entered the plea before the magistrate judge if he understood that his exposure before the sentencing court was a lifetime of supervised release.

Id. at 21. By contrast here, as in Romero-Galindez, the difference between a three-year and a five-year supervised release term is relatively small in the context of a potential life sentence. See 782 F.3d at 69.

Ortiz-García is even further afield. The plea agreement in that case set out the minimum statutory prison term for the relevant offense (ten years) but not the maximum statutory prison term (life), and the district court likewise only informed the defendant of the minimum statutory penalty at the change of plea hearing. See 665 F.3d at 282-83. The maximum penalty was referenced in the PSR, but the district court failed to confirm whether the defendant had reviewed the PSR with his attorney. See id. at 283. Accordingly, we assumed that the defendant "was notified for the first time at his sentencing hearing that he might receive a life sentence." Id. at 287. Considering the timing and the fact that "[t]he omitted information . . . 'dramatically altered the sentencing stakes for the defendant,'" we concluded

- 15 -

that the Rule 11 error affected the defendant's substantial rights. Id. at 288 (quoting Rivera-Maldonado, 560 F.3d at 21). We noted, however, that "[i]f the record [had] clearly established that [the defendant] had reviewed the PSR with his attorney prior to the sentencing hearing, that might indeed negate [his] claim that the Rule 11 error affected his substantial rights, given [his] failure to object to the PSR." Id. at 287.

The record here includes exactly the facts that were missing in Ortiz-García. To recap, (1) the plea agreement set out the correct statutory maximum prison sentence for the relevant offenses and Morales was informed of that statutory maximum at his change of plea hearing; (2) the PSR included the correct supervised release term for the firearm count; (3) in response to the district court's questioning at the sentencing hearing, Morales and his counsel each confirmed that they had reviewed the PSR together in advance of the hearing and that Morales had no objections to the PSR; and (4) after the district court imposed a five-year term of supervised release on the firearm charge, Morales did not object. On this record, Morales has not demonstrated a reasonable probability that, but for the misstatement of the supervised release term for the firearm charge, he would not have entered a guilty plea.

## 2. Sentencing Range for the Carjacking Counts

We turn next to Morales's argument that he was misinformed about his TOL for the carjacking counts. In the plea agreement, the parties calculated a TOL of 21 for the carjacking counts and a corresponding sentencing range of 41 to 51 months in prison for a CHC of II. By contrast, the probation officer calculated a TOL of 25 in the PSR and a corresponding sentencing range of 63 to 78 months in prison for the same CHC. The district court and the parties acknowledged at the sentencing hearing that the PSR included the correct calculation because the probation officer applied an enhancement for brandishing or possessing a firearm in connection with count four (the attempted carjacking of the Eco Sport).

Morales has not shown that a Rule 11 error occurred at all as to the Sentencing Guidelines calculation for the carjacking counts. Rule 11 does not require "a district court to inform the defendant, at a change-of-plea hearing, of the exact manner in which future guidelines calculations may evolve." United States v. Jones, 778 F.3d 375, 383 (1st Cir. 2015) (rejecting, on plain error review, the defendant's argument that the court "did not furnish him with enough information to understand that certain sentencing enhancements might apply" at the change of plea hearing). "Any other rule would put the cart before the horse, requiring the court to get the functional equivalent of a full

presentence investigation report before it could accept a guilty plea."  Id.[6]

To be sure, Morales does cite Rule 11's requirement that the district court inform the defendant of its "obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a)."  Fed. R. Crim. P. 11(b)(1)(M).  Morales does not dispute, however, that the magistrate judge took pains at the change of plea hearing to explain that the district court retained discretion to impose a sentence up to the statutory maximum and that the plea agreement was no more than a recommendation.  In fact, Morales acknowledged this very point in signing the plea agreement.  Nothing more was required.  See Jones, 778 F.3d at 383.[7]

---

[6] Because Morales has not established any error, we do not reach his argument, under prong three, that his substantial rights were impacted.

[7] Morales cites two cases that focus on an entirely different issue: when a district court miscalculates the guidelines sentencing range.  Of course, such a miscalculation by the district court is a well-established procedural error.  See Gall v. United States, 552 U.S. 38, 51 (2007) (explaining that the district court commits a "significant procedural error" by "failing to calculate (or improperly calculating) the Guidelines range"); United States v. McCoy, 508 F.3d 74, 80 (1st Cir. 2007) (remanding for resentencing where the district court's miscalculation of the total loss figure resulted in an incorrect TOL and sentencing range).  But that is not what happened here.  To the contrary,

- 18 -

Finally, we reject Morales's argument that the district court committed a Rule 11(d)(2)(B) error by failing to "confirm whether Morales still wanted to plead guilty" after it became apparent during the sentencing hearing that the plea agreement included an incorrect TOL. As we alluded to earlier, Morales's counsel informed the court during the sentencing hearing that, although the calculation in the PSR was correct, he "unfortunately sold" the calculation in the plea agreement "to [the] defendant as a correct computation of the [Sentencing] [G]uidelines." Having acknowledged as much, defense counsel stated:

> Under the government's plea offer, it would have ended up being a level 21 for . . . the carjacking counts, a level 21, category two, 41 to 51 months, with a recommendation by both parties to the lower end of the [Sentencing] [G]uidelines. Under the presentence report, that shoots up to 63 to 78 months, four levels higher.
>
> So I would urge Your Honor -- you know, the defendants are guided by their attorneys. I should have known better, and I did not check this more carefully. And I would have realized that the other carjacking for which the 924(c) was being dismissed was -- would still carry the enhancement of the weapons, of the weapon used there, brandished.

At the same time, Morales's counsel confirmed both before and after airing his concerns about the TOL for the carjacking counts that he reviewed the PSR with Morales and there were no objections. He

---

Morales agrees that the district court correctly calculated the guidelines sentencing range, relying on the PSR.

- 19 -

likewise confirmed that Morales was "fully aware" of the correct computation.

Morales concedes on appeal that at no point did he or his counsel request to withdraw Morales's plea. He nonetheless argues to us that the district court was obligated under Rule 11(d)(2)(B) to confirm whether he wanted to proceed with his guilty plea.

Rule 11(d)(2)(B) imposes no obligation on the district court to sua sponte inquire whether a defendant would like to withdraw a guilty plea. The plain language of the rule puts the onus of withdrawing a guilty plea on the defendant. See United States v. Cannon, 807 F.2d 1528, 1529 (11th Cir. 1986) (addressing Rule 11(d)'s predecessor, Rule 32(d)). It provides that "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes [the] sentence if[] the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Morales did not seek to withdraw his plea, let alone argue to the district court that he had a fair and just reason for doing so, and the district court had no obligation to pose any additional questions to Morales at the sentencing hearing, at least not on the facts here. See United States v. Scott, 877 F.3d 30, 37 (1st Cir. 2017). For these reasons, there was no Rule 11 error.

## B. Sentencing

We now turn to Morales's challenges to his sentence, as opposed to his guilty plea.  Morales argues that his sentence should be set aside because the district court's upward variance on the firearm count was not supported by the record.  According to Morales, the district court sentenced him for the wrong crime: <u>brandishing</u> a firearm under 18 U.S.C. § 924(c)(1)(A)(ii) instead of the lesser-included offense of <u>possessing</u> a firearm, under 18 U.S.C. § 924(c)(1)(A)(i), to which he pleaded guilty.

The parties dispute whether Morales preserved these claims of sentencing error and thus disagree as to what standard of review applies to these claims.  We therefore begin with the standard of review and then move to the merits.

### 1. Standard of Review

We review claims of sentencing error in "a two-step pavane."  <u>See</u> <u>United States</u> v. <u>Matos-de-Jesús</u>, 856 F.3d 174, 177 (1st Cir. 2017).  "Under this approach, 'we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable.'"  <u>United States</u> v. <u>Polaco-Hance</u>, 103 F.4th 95, 100 (1st Cir. 2024) (quoting <u>United States</u> v. <u>Clogston</u>, 662 F.3d 588, 590 (1st Cir. 2011)).

We review preserved claims of procedural error for abuse of discretion.[8]  See United States v. Vargas-García, 794 F.3d 162, 165 (1st Cir. 2015).  "Under the abuse-of-discretion umbrella, we review the sentencing court's factual findings for clear error and its legal conclusions de novo."  Polaco-Hance, 103 F.4th at 100.  By contrast, we review unpreserved claims of procedural error under the plain error standard.  See Vargas-García, 794 F.3d at 166.

Morales argues for abuse of discretion review because, as he sees it, he objected to the district court's statement during the sentencing hearing that he pleaded guilty to brandishing.  In support of his position, Morales relies on two portions of the sentencing transcript.  First, he cites the district court's statement that "the Court is fully aware that the defendant, as to Count 1, plead[ed] guilty to the modality of brandishing, which under the [Sentencing] [G]uidelines has a sentence of 60 months" and a "statutory penalty . . . from five to life."[9]  Second, he points to the following exchange between the court and his counsel:

_____

[8] In his opening brief, Morales did not include a challenge to the substantive reasonableness of the district court's upwardly variant sentence for the firearm count.  Instead, he raised that challenge for the first time in his reply brief.  But our case law is clear that an appellant waives any claims of error raised only in a reply brief.  See United States v. Eirby, 515 F.3d 31, 36 n.4 (1st Cir. 2008).  Accordingly, we deem this argument waived.

[9] As we discuss in more detail below, infra Section II.B.2, the rest of the transcript makes clear that the court's use of the word "brandishing" was merely a slip of the tongue.

- 22 -

The Court: Mr. Lincoln, any remaining request[s] you may have?

Mr. Lincoln: Yes, Your Honor. Did Your Honor state that [Morales] had plead[ed] guilty to brandishing a weapon?

The Court: No. I stated that I am aware he plead[ed] guilty to the lesser included offense that under the [Sentencing] [G]uidelines do carry a penalty of 60 months, under the statute carries a minimum mandatory penalty of five years up to life. As to Count 1, the Court engaged in a variant sentence and made the findings upon which the Court understands that a sentence higher than the one recommended by the [Sentencing] [G]uidelines of 60 months is warranted.

The government argues that because Morales did not reassert an objection after this exchange, he did not preserve the issue and thus plain error review applies. And, as the government points out, shortly after this exchange, defense counsel stated "[t]hat would be all, Your Honor."

Because Morales's procedural reasonableness claims fail under either standard of review, we bypass the preservation issue and proceed under the more favorable abuse of discretion standard. See United States v. Tejeda, 481 F.3d 44, 56 (1st Cir. 2007) ("We bypass the question of forfeiture because even if [the defendant] preserved his claim, it fails on the merits.").

### 2. Procedural Reasonableness

We begin with Morales's claim that the district court, effectively, punished him for brandishing rather than possessing

a firearm, the charge to which he had pleaded guilty. Morales's argument is premised on the court's statement during sentencing that:

> Considering the seriousness of the defendant's actions, and the fact that during each one of the carjackings weapons were pointed at the victims and the weapons were actually brandished, the Court is fully aware that the defendant, as to Count 1, plead[ed] guilty to the modality of brandishing, which under the guidelines has a sentence of 60 months. However, the statutory penalty is from five to life.
>
> And in view of the actions that the defendant admitted to, to the shooting, or firing of the weapon at this place, as admitted by the defendants, the endangerment of public -- of individuals, and also considering that we are talking about independent incidents of carjacking in this one, in which the weapon was also brandished, as to this count, the Court will vary and it will be the judgment of the Court that Mr. Edgar Joel Morales Ortiz is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 84 months as to Count 1.

Because Morales concedes that the district court's statement that he pleaded guilty to the "modality of brandishing" was merely a slip of the tongue, we see no basis for his argument that the court procedurally erred in imposing an 84-month sentence for the firearm count simply because such a sentence was "effectively" a sentence for brandishing a weapon.[10] Indeed, there

---

[10] Although Morales's opening brief can be read to argue that the district court sentenced Morales on the mistaken belief that

- 24 -

was no dispute that a weapon was brandished during the carjacking of the Ranger, to which the firearm count attached. Further, although Morales seems to suggest otherwise in his reply brief, there is no indication that the court attributed that brandishing to Morales himself. Remember, the PSR stated that, in connection with the carjacking of the Ranger, a "firearm was pointed at a male victim," and the PSR made clear that it was Morales's compatriots who executed that carjacking while he waited inside another car. Because the sentencing factors explicitly instruct the sentencing judge to take into account "the nature and circumstances of the offense," the court did not abuse its discretion by considering these facts. 18 U.S.C. § 3553(a)(1).

Morales also relies on the district court's statement of reasons form, which provided that the court imposed a variance in

Morales <u>pleaded</u> guilty to brandishing, Morales makes clear in his reply brief that he is actually making a somewhat different argument. According to Morales, he "understands that the sentencing judge imposed the variant sentence" for possession of a firearm under § 924(c)(1)(A)(i), but he contends that this variant sentence was unreasonable because it was "tantamount to sentencing him for brandishing a firearm." That the district court understood that Morales pleaded guilty to possession is, in fact, clear from its references to the guidelines sentence for possession (60 months) and the statutory penalty for possession (five years to life). <u>See</u> 18 U.S.C. § 924(c)(1)(A)(i); U.S. Sent'g Guidelines Manual § 2K2.4(b) (explaining the guidelines sentence for violations of 18 U.S.C. § 924(c)) [hereinafter "U.S.S.G."]. As Morales recognizes, the variant sentence imposed (84 months) would not be a variant sentence at all for the offense of brandishing, which has a guidelines sentence of 84 months and a statutory sentence of seven years to life. <u>See</u> 18 U.S.C. § 924(c)(1)(A)(ii); U.S.S.G. § 2K2.4(b).

part because "the defendant brandished the firearm in the two robberies." He is right that this portion of the statement of reasons is incorrect. The PSR did <u>not</u> indicate that Morales personally brandished a firearm in connection with either carjacking. As to the attempted carjacking of the Eco Sport, the PSR stated only that the victim "saw a firearm" but did not specify whether it was brandished. Nonetheless, as the government points out, when "the district court's oral expression of its sentencing rationale varies materially from its subsequent written expression of that rationale, appellate courts have tended to honor the former at the expense of the latter." <u>United States</u> v. <u>Morales-Negrón</u>, 974 F.3d 63, 68 (1st Cir. 2020) (quoting <u>United States</u> v. <u>Muniz</u>, 49 F.3d 36, 42 n.5 (1st Cir. 1995)). "This makes particular sense here because [in Puerto Rico] the [statement of reasons], though ultimately sent to the sentencing judge for final approval, is prepared by the U.S. Probation Office, after sentencing, based on the judge's prior in-court statements." <u>Id.</u> (citing D.P.R. Standing Order No. 17-205 (April 28, 2017), https://perma.cc/37PB-HYYF). And as we set out above, the transcript of the sentencing hearing and the court's "oral expressions" do not support the conclusion that the court mistakenly believed that Morales personally brandished a weapon in connection with either carjacking. Thus, we see no procedural error on this score either.

Indeed, the record demonstrates that the district court imposed an upwardly variant sentence for the firearm count based on the totality of Morales's conduct that fateful night. In doing so, the court permissibly relied on Morales's own admissions and undisputed facts in the PSR. See United States v. Rivera-Ruiz, 43 F.4th 172, 184 (1st Cir. 2022) ("A sentencing court can indeed rely on the undisputed information contained in the PSR at sentencing as 'generally, a PSR bears sufficient indicia of reliability.'" (quoting United States v. Díaz-Rivera, 957 F.3d 20, 27 (1st Cir. 2020))).[11] The court pointed to (1) the fact that Morales discharged a firearm with bystanders nearby both outside and inside a bar during an armed robbery on the night of the carjackings and (2) Morales's admission that he rear-ended other vehicles that very same night with the intent to rob the drivers (but was prevented from doing so by the fact that they kept driving). Acting well within its discretion, the court found this conduct showed both "a lack of respect for the law" and "disregard for human life." The court was also concerned that Morales's admission to police that he believed he would not be caught by law

---

[11] We pause to note that Morales argued that the evidence for the uncharged conduct was unreliable only in his reply brief and thus waived this argument. See Eirby, 515 F.3d at 36 n.4. But even putting waiver aside, because Morales volunteered the information about the armed robbery and he did not object to its inclusion in the PSR, we do not see how it could be clear error for the district court to rely on this information. See Rivera-Ruiz, 43 F.4th at 184.

enforcement reflected a lack of "introspection and maturity." Contrary to Morales's assertion, these statements constitute an adequate explanation for the district court's upward variance.

Finally, we turn to Morales's argument that it was clearly erroneous for the district court to rely on uncharged conduct involving a firearm because the higher TOL for the carjacking counts already accounted for Morales's use of a firearm. In support of this argument, Morales cites a policy statement from the Sentencing Guidelines, which explains that

> [t]he court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range.

U.S.S.G. § 5K2.21. The parties agree that the district court included a firearm enhancement in the Sentencing Guidelines calculation for the carjacking charge in count four (the attempted carjacking of the Eco Sport). But, as the government contends, that enhancement only accounted for possession of a firearm in connection with that count. Morales has not adequately explained why it would be clear error for the district court to rely on Morales's undisputed firing of a weapon at a bar later that night to impose an upward variance on the entirely separate firearm

count, when that fact could be considered under the guidelines. Accordingly, we find no abuse of discretion.

### III. CONCLUSION

For all these reasons, we **<u>affirm</u>** Morales's conviction and sentence.